[S.F. No. 23177. In Bank. Mar. 5, 1975.]

ROY ALLEN LUCAS, Plaintiff and Appellant, v.
BOARD OF EDUCATION OF THE FORT BRAGG UNIFIED
SCHOOL DISTRICT, Defendant and Respondent.

**COUNSEL**

Leo M. Cook for Plaintiff and Appellant.

Duncan M. James, District Attorney, and Lee S. Adams, Deputy District Attorney, for Defendant and Respondent.

## Opinion

**MOSK, J.**—Plaintiff Roy Allen Lucas, a probationary public high school teacher, appeals from a judgment which denied his application for a writ of mandate to compel defendant school board to set aside his dismissal and order his reinstatement.

The question presented is whether a school board is required to either make or adopt findings of fact and determination of issues at the time of its decision not to reemploy a probationary teacher. We conclude that it must do so.

Lucas was employed by the district as a machine shop instructor for three successive school years, beginning in the 1970-1971 term. On March 5, 1973, in accordance with the procedure set forth in Education Code section 13443 and Government Code section 11500 et seq., the district filed and served him with a written accusation charging his "inability to control the class and maintain reasonable order and discipline," and "lack of interest in and understanding of pupils." The accusation documented each of these two general charges with references to observations and evaluations made by the school principal at intervals throughout the preceding two and one-half years of Lucas' employment. None of the reported classroom situations or incidents was particularly egregious. Rather, the record reflected what the hearing officer later concluded was a "lack of communication" between Lucas and the principal—both of whom were, in his estimation, "well motivated."

Upon receiving a copy of the written accusation, Lucas requested and was given a public hearing to contest the charges. (Ed. Code, § 13443.) At the conclusion of the proceedings, which lasted two days, the hearing officer filed a carefully drawn series of factual findings, several of which tended to negate the principal's charges. He also filed determinations that: "A. . . . while respondent had considerable problems in initially controlling some of the more difficult students in his beginning classes, it was not established, on the whole that respondent had, or now has, an inability to exercise such control and/or to maintain reasonable order and discipline," and "B. . . . While it is true that respondent once lacked an in-depth understanding of the behavioral aspects of his students, such a deficiency was and has now been surmounted by respondent. It is not true, and never was true, that respondent lacked interest in his students."

In his proposed decision the hearing officer refrained from reaching a conclusion on whether the facts found constituted sufficient cause for nonretention, a matter for the school board to determine.[1] The hearing officer also filed a memorandum opinion on the same date explaining that "the principal (and almost 'sole') witness on behalf of the superintendent was sincere in his observations and recordings—but, lacked both experience and education in this particular field of industrial arts. On the other hand, respondent himself, perhaps because he was somewhat of a stranger to his new education environs, failed to adequately communicate with his principal. At least one result of such lack of communication was that, while each of these persons was well motivated, they nevertheless operated on different wave lengths."

On May 10, 1973, the school board met and considered the hearing officer's report, and heard arguments presented by both counsel and by a representative of the California Teachers Association. The board decided by unanimous vote not to reemploy Lucas.

On May 11, 1973, the superintendent sent Lucas a "notice of non-reemployment" informing him that he would not be rehired for the 1973-1974 school year, and that the decision "was based upon [the board's] analysis of the transcript of the hearing conducted at [his] request." Neither the board nor the superintendent made or incorporated findings of fact and determination of issues required by Government Code section 11518, quoted hereinafter.[2]

Approximately one week later, in a letter received by the superintendent on May 17, 1973, Lucas asked for "the exact reason" for the board's refusal to rehire him. (See Ed. Code, § 13443, subd. (f).) The superintendent replied that "the Board . . . concluded from its study of said [hearing] transcript and some of the specific findings of the Hearing Officer, that you demonstrated an inability to effectively control some of

---

[1]We note that 1973 amendments to the Education Code, which became effective after the events here in question, have modified this aspect of the procedure. Amendments to section 13443, in particular, provide that while the hearing officer's proposed decision prepared for the governing board "shall contain a determination as to the sufficiency of the cause and a recommendation as to disposition," the board has final authority to decide these matters and "None of the findings, recommendations, or determinations contained in the proposed decision prepared by the hearing officer shall be binding on the governing board or on any court in future litigation."

[2]The minutes of the school board—which were never communicated to Lucas—indicate only that "after consideration of the transcript and findings of said hearing" the dismissal vote was taken. These minutes cannot be interpreted as the "findings" required by section 11518.

your classes. Secondly, from such reading of the transcript and some of the specifics found by the Hearing Officer, the Board concluded that you had not demonstrated an acceptable understanding of, or interest in, students in the Fort Bragg Unified School District."[3]

Shortly thereafter Lucas filed the present action for writ of mandate to compel the district to set aside its dismissal and reemploy him for the 1974-1975 school year. In refusing to grant the writ, the trial court rejected Lucas' contentions that the dismissal process was defective because the board did not make findings of fact and determinations of issues. The court concluded "there was no question in anyone's mind in view of this record as to why petitioner was discharged," and apparently assumed the record was adequate for purposes of judicial review and notice to the party affected.

Section 13443 of the Education Code requires that in the event an employee facing dismissal makes a timely request for a hearing "the proceeding shall be conducted and a decision made in accordance with [sections 11500-11528] of the Government Code," with certain minor modifications as to notice and discovery. ■ Section 11518 of the Government Code, in turn, provides "[t]he decision shall be in writing and shall contain findings of fact, a determination of the issues presented, and the penalty, if any. The findings may be stated in the language of the pleadings or by reference thereto. Copies of the decision shall be delivered to the parties personally or sent to them by registered mail." In the present case the board's decision did not recite and resolve the facts and issues, either directly or by reference to the pleadings. As a result, when the May 15 statutory deadline passed for notice of termination (§ 13443, subds. (e) and (h)) Lucas had not been legally terminated.

These procedural defects were not cured by the superintendent's letter response of May 24 to the inquiry in which Lucas requested the precise reasons for his nonreemployment.[4] Lucas was not required to bring the

---

[3]The minutes of the board meeting do not contain these findings; nor does the record reveal whether the superintendent was present at the May 10 board meeting, although he did sign the May 24 letter as both superintendent and secretary of the board.

[4]The superintendent's reply was not substantively helpful. He reported the board found from *some* of the hearing officer's findings that the teacher was unable to control *some* of his classes, and that from *some* of the findings of the hearing officer the teacher had not demonstrated an acceptable understanding of or interest in the students. We do not pass on whether a more specific statement is required by section 13443, subdivision (f).

district's attention to the alleged inadequacies before the statutory deadline, and the district alone must bear the burden of its failure to comply with the procedural prerequisites for dismissal.

This requirement does not place undue emphasis on a mere procedural point. It is precisely the procedural steps which safeguard employees from arbitrary or careless adjudications. "Fairness of procedure," said Justice Frankfurter, "is 'due process in the primary sense.' " (*Anti-Fascist Committee* v. *McGrath* (1951) 341 U.S. 123, 161 [95 L.Ed. 817, 848, 71 S.Ct. 624].) These protections are as necessary before a school board, which must hear and decide in rapid succession numerous personnel matters, many of them charged with emotion, as before a hearing officer who, by virtue of training and experience, will generally afford more time and study to the facts, circumstances, and legal bases surrounding an individual's proposed dismissal. The requirement that such determination of fact and issue accompany, rather than follow, the board's decision has a manifest purpose: it serves to prompt more deliberate consideration and analysis of the matter at hand. As Justice Marshall pointed out in his dissenting opinion in *Board of Regents* v. *Roth* (1972) 408 U.S. 564, 591-592 [33 L.Ed.2d 548, 569, 92 S.Ct. 2701], "It might also be argued that to require a hearing and a statement of reasons is to require a useless act, because a government bent on denying employment to one or more persons will do so regardless of the procedural hurdles that are placed in its path. Perhaps this is so, but a requirement of procedural regularity at least renders arbitrary action more difficult. Moreover, proper procedures will surely eliminate some of the arbitrariness that results, not from malice, but from innocent error. . . . When the government knows it may have to justify its decisions with sound reasons, its conduct is likely to be more cautious, careful and correct."

There is a second, and somewhat different, purpose for the requirements of Government Code section 11518: they elicit a written record which facilitates judicial review. As this case illustrates, neither the notice of nonreemployment used by defendant school district nor the subsequent exchange of letters pursuant to Education Code section 13443, subdivision (f), is an adequate substitute.

Meaningful judicial reconsideration would be a hollow process in the absence of an explicit statement of factual findings and issue determinations from the administrative agency. The decision may refer to or incorporate findings and issues stated in the pleadings or in the hearing officer's report, but it must do so specifically. Sufficient specificity is not

found here in the board's statement, which merely referred to an "analysis" or "consideration" of the hearing transcript and report.

We are not persuaded by defendant's contentions that the "request for reasons" provision of Education Code section 13443, subdivision (f), will serve to assure a complete administrative record. While this subdivision allows the teacher to request and receive a statement of reasons, it does not provide for the inclusion of that statement in the record. Nor is the request a prerequisite to judicial review; a teacher may seek appropriate court review without having requested or received a statement of reasons. In such circumstances the reviewing court would be compelled to speculate on the rationale of the board's disposition.

■ Neither are we persuaded by defendant's contentions that the requirements of Government Code section 11518 and Education Code section 13443, subdivision (f), are redundant in cases where the teacher requests the statement of reasons defined in the latter statute. We note that section 13443, subdivision (f), functions independently in instances where the teacher receiving notification of nonreemployment waives the hearing procedure, but nevertheless asks for a written statement of the reasons for nonreemployment. Moreover, we believe that if the Legislature, in its enactment of the revised section 13443, had intended to preempt the operation of section 11518 in this area, it would have done so explicitly, as it did in modifying the applicability of Government Code sections 11507.6 (discovery) and 11505 (notice). Absent such express modification, we conclude that the Legislature intended that the decision be made "in accordance with Chapter 5 of Part 1 of Division 3 of Title 2 of the Government Code," which includes section 11518. (Ed. Code, § 13443, subd. (c).)

Section 11517, subdivision (b), directs the hearing officer to prepare "a proposed decision in such form that it may be adopted [by the board] as the decision in the case." Section 11518 requires the decision to be in writing and to contain findings of fact and a determination of issues. Since it is the board that renders "the decision," we hold that section 11518 applies not only to the form of the proposed decision prepared by the hearing examiner, but also to the final decision rendered by the board. While fully cognizant of the limited time available to school boards for disposing of personnel matters, we perceive that the application of section 11518 in the final phases of this proceeding is crucial to the maintenance of a fair dismissal procedure. Section 13443, particularly as amended in 1973 after the events here in question, invests the board

with considerable discretion, but it also contemplates that when the members of the board exercise that discretion they will do so as an informed, deliberative body, not merely by arbitrary approval of the recommendations of one or more administrators in the district.[5]

Finally, our conclusion herein accords with our recent decisions in *Bekiaris* v. *Board of Education* (1972) 6 Cal.3d 575 [100 Cal.Rptr. 16, 493 P.2d 480], and *Griggs* v. *Board of Trustees* (1964) 61 Cal.2d 93 [37 Cal.Rptr. 194, 389 P.2d 722]. In those cases we remarked that " 'Under the applicable provisions of the Administrative Procedure Act . . . the board must make findings of fact and determine the issues presented.' " (*Bekiaris*, 6 Cal.3d at p. 586; *Griggs*, 61 Cal.2d at pp. 95-96.) While neither decision focused on the requirement that the board support its disposition with findings of fact and a determination of issues, in both cases section 11518 was cited and found to be applicable.

In view of the foregoing, we conclude the judgment must be reversed. ■ The question of remedy, however, remains. The primary issue is whether the school board's failure to accompany its decision with findings of fact and determination of issues vitiated the board's ability to provide the requisite final notice by May 15, thereby entitling Lucas to the automatic reinstatement he seeks, pursuant to subdivision (h) of section 13443, which states that "In the event that the governing board does not give notice provided for in subdivision (e) of this section on or before May 15, the employee shall be deemed reemployed for the ensuing school year."[6]

The last case in which this court confronted the issue was *Horner* v. *Board of Trustees* (1964) 61 Cal.2d 79 [37 Cal.Rptr. 185, 389 P.2d 713]. In *Horner* we ruled that the board erred in denying a hearing to a third-year probationary teacher who it had notified would not be reemployed; we rejected the teacher's contentions that she was entitled, as a matter of law, to reinstatement and tenure. Instead, we affirmed the issuance of a writ which ordered the board to conduct a hearing on her dismissal. In essence, we gave the board an opportunity to repeat the dismissal procedure without the error which had characterized its first attempt. But

---

[5]While our holding is premised on 1973 law, the Education Code amendments which took effect in 1974 and enhanced the board's discretionary powers would appear to compel a similar result. The greater the scope of the board's discretion, the stronger the need for a statutory check on its potential abuses.

[6]Subdivision (h) of section 13443 read, in the spring of 1973 when these events occurred, as it reads now.

our reasoning in *Horner* was based on the 1964 version of Education Code section 13443, a version which arguably left room for doubt as to the steps and timing prerequisite to a valid dismissal. We remarked that the board's delay in not granting a hearing until after the writ of mandate issued was reasonable, given the board's good faith belief that the teacher was not entitled to a hearing, and given the fact that at the time the teacher requested a hearing "there existed . . . a difference of opinion as to whether she was legally entitled to it, and there was then no authoritative decision on the point." (*Id.* at p. 86.)

In 1965, the Legislature amended section 13443 to outline a step-by-step procedure with express deadlines "[i]n apparent response to the criticism of the *Horner* case that no date was provided for holding the hearings, and that the only date mentioned was May 15." (*Ward* v. *Fremont Unified Sch. Dist.* (1969) 276 Cal.App.2d 313, 321 [80 Cal.Rptr. 815].) Subdivision (a) of the newly amended code section read, "On or before the 15th day of May in any year, the governing board may give notice in writing to a probationary employee that his services will not be required for the ensuing year, provided that in no case shall such notice be given until after the requirements of this section have been met." (Stats. 1965, ch. 1110, p. 2755, § 2.)

*Ward* was the first case after the 1965 amendments to raise remedy issues similar to those now before us. Ward was a third-year probationary teacher whose dismissal was defective because the board denied him "[the] privileges granted by Education Code section 13443 and Government Code section 11513, including the right to cross-examine opposing witnesses under oath." (*Id.* at p. 317.) In determining that Ward was entitled to reinstatement and tenure the court relied, in significant part, on the foregoing statutory language prohibiting the giving of notice until all requirements of section 13443 were met. In a holding often cited in subsequent Court of Appeal opinions, the court concluded "that the May 15, 1967 notice constituted a jurisdictional deadline after which defendants could not act to terminate Ward's services." (*Id.* at p. 322.)

In 1969 the Legislature amended section 13443, rearranging its procedural steps into chronological order and omitting the proviso in subdivision (a) which the Court of Appeal had relied on in *Ward.* Assuming, as we must, that this omission was intentional, we find the result here controlled by our earlier holding in *Horner.* Plaintiff is therefore entitled to a new hearing before defendant school board,

promptly followed by findings of fact, determination of issues, and a new decision in accordance with section 13443.

Since the appropriateness of reemployment will be determined by the board, we do not reach plaintiff's claims for back pay and permanent status.

The judgment is reversed and the case is remanded to the trial court for further proceedings in conformity with this opinion.

Wright, C. J., McComb, J., Tobriner, J., Sullivan, J., and Clark, J., concurred.