[Civ. No. 38810. First Dist., Div. One. Apr. 20, 1977.]

GEORGE I. GRANT, Plaintiff and Appellant, v.
DOROTHY ADAMS et al., Defendants and Respondents.

## COUNSEL

Maurice J. Nelson and Daniel L. Gardner for Plaintiff and Appellant.

James G. Seely as Amicus Curiae on behalf of Plaintiff and Appellant.

Keith C. Sorenson, District Attorney, and Thomas F. Casey III, Deputy District Attorney, for Defendants and Respondents.

## OPINION

**LAZARUS, J.**[*]—Appellant George I. Grant is a certified teacher who also has credentials as an administrator. He was first employed by respondent Jefferson Elementary School District of San Mateo County in an administrative capacity as a vice-principal for the school year 1966-1967. He later served as a principal for each succeeding school year through and including the 1973-1974 school year.

---

[*]Retired judge of the superior court sitting under assignment by the Chairman of the Judicial Council.

On March 1, 1974, however, appellant was notified pursuant to Education Code section 13443.6 that he might not be reemployed in the capacity of a principal for the succeeding school year (1974-1975). Then on May 1, 1974, respondent board of trustees for the school district announced that he was to be transferred to a teaching position for the 1974-1975 school year. In response to appellant's request for a statement of reasons pursuant to Education Code section 13314.7, the board responded as follows: "Due to the financial condition of the district, the closing of one of our schools, and a desire to realign the administrative structure, it was necessary to reduce our administrative staff. After a review of all administrators and administrative positions, it was decided that based upon the above considerations you be reassigned to a classroom teaching position."

After appellant had been demoted respondent school district promoted at least one classroom teacher to a position as principal.

Promptly thereafter appellant filed his petition for a writ of mandate in the superior court, seeking, inter alia, reinstatement, damages, and a declaration that he had been denied due process. A demurrer to the petition was sustained without leave to amend and this appeal is from the trial court's judgment of dismissal. The Association of California School Administrators (hereinafter ACSA) has filed an amicus curiae brief in support of appellant.

We consider first appellant's contention that his transfer from his position as principal to a classroom teaching assignment deprived him of property and liberty in violation of the due process guarantees of the Fourteenth Amendment.

■ Two conflicting theories must be weighed by appellate courts in reviewing cases involving the discharge of public employees. The emphasis on one is to protect the employee from any attempt to curtail his exercise or deprive him of constitutionally protected rights, including any property right in his position. The other is to give governmental agencies the flexibility in personnel matters and policies that will enable them to encourage competency and efficiency in public employment.

Where the employment is one terminable at will, courts until recently have been particularly reluctant to entertain challenges to the right of the executive to discharge or otherwise control its relationship with its own

employees. Indeed, it was not until 1952 that the Supreme Court of the United States for the first time extended the protective mantle of the Fourteenth Amendment to the public employees at all. This was in *Wieman* v. *Updegraff* (1952) 344 U.S. 183 [97 L.Ed. 216, 73 S.Ct. 215], holding that an Oklahoma statute prescribing a loyalty oath for state officers and employees was an arbitrary denial of due process rights. It was not until 20 years later, however, that the question arose again in *Board of Regents* v. *Roth* (1972) 408 U.S. 564 [33 L.Ed.2d 548, 92 S.Ct. 2701]. *Roth* dealt with the due process rights of nontenured teachers who were not rehired by state educational institutions. The court ruled that whenever a state makes a charge that could seriously damage an employee's reputation or standing or stigmatize him in a way that would foreclose his opportunities for other employment, an infringement on Fourteenth Amendment liberty will be deemed to have occurred. In the same term, *Roth* was followed by *Perry* v. *Sindermann* (1972) 408 U.S. 593 [33 L.Ed.2d 570, 92 S.Ct. 2694], also involving the rights of nontenured teachers. In *Perry,* the court thus summarized its holding in *Roth*: "[T]he Constitution does not require opportunity for a hearing before the nonrenewal of a nontenured teacher's contract, unless he can show that the decision not to rehire him somehow deprived him of an interest in 'liberty' or that he had a 'property' interest in continued employment, despite the lack of tenure or a formal contract." (408 U.S. at p. 599 [33 L.Ed.2d at p. 578].)

■ In order to have a property interest in public employment an individual must have a "legitimate claim of entitlement to it." (*Board of Regents* v. *Roth, supra,* 408 U.S. at p. 577 [33 L.Ed.2d at p. 561]; see *Skelly* v. *State Personnel Bd.* (1975) 15 Cal.3d 194, 207 [124 Cal.Rptr. 14, 539 P.2d 774].) And a refusal to reemploy a person does not constitute a deprivation of liberty unless such nonretention imposes "a stigma or other disability that foreclosed his freedom to take advantage of other employment opportunities." (*Roth, supra,* at p. 573 [33 L.Ed.2d at p. 559].) ■ We have concluded that appellant had no constitutionally protected property right to his job as principal.

Another recent Supreme Court decision clearly mandates that the issue of whether a property interest in public employment has been created must be distinctly decided by reference to state law. (*Bishop* v. *Wood* (1976) 426 U.S. 341 [48 L.Ed.2d 684, 96 S.Ct. 2074].)[1]

---

[1]*Bishop* held that under North Carolina law a police officer, even though designated a "permanent employee," served at the pleasure of the city, and the right to fire him was conditioned only on compliance with certain specified procedures.

It has been authoritatively established in California that school administrators serve at the pleasure of the governing board. In *Hentschke* v. *Sink* (1973) 34 Cal.App.3d 19 [109 Cal.Rptr. 549], a principal who had been transferred to teaching status sought reassignment to his former position. After noting the elaborate provisions for demotion or dismissal of employees of school districts, the court itemized the sparse legislative references to administrators. (Ed. Code, §§ 13314, 13314.3, 13314.5, 13314.7, and 13443.6, quoted in their entirety by the court; *Hentschke* v. *Sink, supra,* at pp. 21-22.) It then concluded: "We think it clear that, as opposed to classroom teachers, an administrator attains no tenure in his status as such. He serves as an administrator at the pleasure of the appointing power. Nothing in the statutes above quoted limits the authority of the appointing power to remove an administrator for any reason satisfactory to that appointing power; nothing in the statutes entitles an administrator, so removed, to any hearing, other than the requirement that, on request, he be furnished with a statement of the reasons for his reassignment to a different status. [¶] The distinction is not without reason. Certification as a classroom teacher and permanent status as such come after proof of teaching capacity; that status does not call for day-to-day cooperation in a wide variety of administrative decisions, . . . But a second or third level administrator bears to his superiors a relationship of the most intimate nature, requiring complete trust by the top administrators in the judgment and cooperative nature of the subordinate. The loss of that trust is not a matter susceptible of proof such as is involved in the cases where a classroom teacher is dismissed or demoted for objective acts of misconduct. To introduce into the administrative structure the elements of discharge for 'cause' and of formal hearing would be to make effective school administration impossible. The statutes do not require that." (*Id.,* at pp. 22-23.)

Similarly, this court declared in *Council of Directors and Supervisors* v. *Los Angeles Unified Sch. Dist.* (1973) 35 Cal.App.3d 147 at page 152 [110 Cal.Rptr. 624]: "According to [Education Code] section 13315 '[a] person employed in an administrative or supervisory position requiring certification qualifications upon completing a probationary period, . . . shall [in a district such as defendant district] be classified as and become a permanent employee as a classroom teacher.' In other words, supervisors and administrators are not permanent employees as such. They are, however, permanent employees as and only as classroom teachers. (See *Holbrook* v. *Board of Education,* 37 Cal.2d 316, 334 [231 P.2d 853]; *Board of Education* v. *Swan,* 41 Cal.2d 546, 555-556 [261 P.2d 261], overruled on

a different point in *Bekiaris* v. *Board of Education,* 6 Cal.3d 575, 588 [100 Cal.Rptr. 16, 493 P.2d 480].)"

Since administrators have no tenure in their positions, this court held in both *Hentschke* and *Council of Directors and Supervisors* that the demotion of school administrators to classroom teachers without providing a hearing or a statement of charges is not a denial of due process.[2]

Appellant therefore concedes of necessity that a certificated employee cannot acquire tenure as an administrator under the Education Code. He nevertheless contends that this does not preclude him from acquiring a property interest in a particular administrative position. Appellant's theory is that certain provisions of the Stull Act,[3] when coupled with other statutory provisions, have created a property interest not in existence at the time *Hentschke* and *Council of Directors and Supervisors* were decided. He argues that the Stull Act established procedural guarantees for all certificated employees including administrators, and that these requirements have resulted in the creation of property rights, even in the absence of tenure. Appellant relies particularly upon a federal district court case in which a nontenured teacher was held to have a property right in her position by virtue of a state statute which provided that nonrenewal of her contract may not be " 'arbitrary,

---

[2]In *Council of Directors and Supervisors* the court stated: "The recipients [of demotion notices], having no tenure in their promotional level positions from which they were being demoted, were not entitled to constitutional due process prior to the deprivation of the positions because their interest in the positions was not encompassed by the Fourteenth Amendment's protection of liberty and property. Stated otherwise, their expectation of continued employment in their promotional level positions was not an interest warranting such constitutional protection. (See *Board of Regents* v. *Roth* .(1972) 408 U.S. 564, 569, 575-578 [33 L.Ed.2d 548, 556, 560-561, 92 S.Ct. 2701].)" (*Council of Directors and Supervisors* v. *Los Angeles Unified Sch. Dist., supra,* 35 Cal.App.3d at p. 154.)

In *Hentschke* the court stated: ". . . demotion involves a reduction in compensation and some loss of professional standing. But those consequences follow in every case of the discharge of any employee-at-will. We are not persuaded that public school administrators hold some kind of special status that entitles them, as a matter of constitutional right, to more formality in their transfer than the law affords to employees in general." (*Hentschke* v. *Sink, supra,* 34 Cal.App.3d at p. 23.) Additionally, the court noted that: "To introduce into the administrative structure the elements of discharge for 'cause' and of formal hearing would be to make effective school administration impossible." (*Ibid.*)

[3]In 1971 the Legislature passed the so-called "Stull Act," Education Code sections 13485-13490. Among other things the Stull Act required that all school districts establish evaluation procedures for certificated personnel. (Ed. Code, § 13485.) The state board of education developed guidelines for evaluation of administrators and teachers pursuant to the Stull Act. Respondents adopted those guidelines without relevant change in June 1972. The guidelines called for evaluation of personnel on permanent status at least once every two years. Appellant was given no evaluation pursuant to the guidelines.

capricious, discriminatory or for personal or political reasons.' " (*Sigmon* v. *Poe* (W.D.N.C. 1974) 381 F.Supp. 387, 391-393.)

*Sigmon* is readily distinguishable from the present case. As the following discussion will reveal, the statutory provisions upon which appellant relies do not, as in *Sigmon*, diminish or curtail the right of the appointing authority to terminate an administrative appointment at will. Thus they do nothing to establish a legitimate claim of "entitlement" to an administrative position. Appellant cites the following provisions:

1. Education Code section 13443.6 provides that unless notice is given by March 15th of any year that the principal may not be retained in that capacity for the coming school year, he shall be retained as a principal. *Barton* v. *Governing Bd.* (1976) 60 Cal.App.3d 476 [131 Cal.Rptr. 455], interpreted this section as a jurisdictional requirement; absent notice, a transfer is not effective, and is subject to reversal. But the *Barton* court also stated (1) that "The board's discretionary power [to transfer at its pleasure] is encumbered only by the requirement of timely notice"; (2) that a transfer "may typically involve no more than a personality conflict"; and (3) that "The March 15 deadline for notice is apparently intended to afford the employee time to seek other employment as an administrator." (*Id.,* at pp. 479-480.) This notice requirement, which requires no explanation, cannot provide principals with any legitimate sense of "entitlment." (See *Board of Regents* v. *Roth, supra,* 408 U.S. at p. 577 [33 L.Ed.2d at p. 561].)

2. Education Code section 13314.7 requires the school authorities, *after* having transferred a principal, to give a statement of reasons for their transfer. Neither appellant nor the ACSA indicates why or on what basis this requirement tends to establish a property interest in public employment. In fact, appellant's brief concedes that this section "merely requires the school board to state upon request, the *actual* reasons for demotion."

3. ■ The Stull Act was designed to "establish a uniform system of evaluation and assessment of the performance of all certificated personnel. . . ." (Ed. Code, § 13485.)[4] The act requires certificated employee reviews once every two years, and a discussion with the employee about the evaluation. (Ed. Code, § 13489.) Education Code section 13407 makes a Stull Act evaluation an express precondition to dismissal of a

---

[4] This section has since been amended. The changes are not relevant to the present discussion, however.

permanent employee. Appellant contends that an evaluation is likewise a precondition to termination of an administrative assignment.

The same argument was made in *Anaclerio* v. *Skinner* (1976) 64 Cal.App.3d 194 [134 Cal.Rptr. 303], a case in which the Supreme Court denied a hearing on January 27, 1977, after the filing of the initial briefs in this appeal. *Anaclerio* rejected the notion that a Stull Act evaluation was a prerequisite for the reassignment of a principal to a teaching position, noting that "Nowhere does [the Stull Act] purport to establish such reports as a jurisdictional requirement to termination" of purely administrative assignments within a school district. (*Id.,* at p. 197; cf. *Vick* v. *Board of Education* (1976) 61 Cal.App.3d 657, 662 [132 Cal.Rptr. 506] [Stull Act evaluation not a precondition to termination of a probationary teacher].) Both *Anaclerio* and *Vick* make it abundantly clear that a pretransfer evaluation was not required before appellant could be reassigned to other duties.

Appellant also offers a statement by the author of the Stull Act as authority for the proposition that, notwithstanding the decisions to the contrary, an evaluation is a prerequisite to transfer of an administrator to a teaching position. ■ A court, however, may not consider the motive or understandings of individual legislators in construing a statute, and no exception to this principle can be carved out simply because the legislator whose motives or opinions are proffered was the author of the bill in controversy. (*In re Marriage of Bouquet* (1976) 16 Cal.3d 583, 589 [128 Cal.Rptr. 427, 546 P.2d 1371].)[5]

■ We come now to appellant's claim that he had a protectible *liberty* interest in his job as administrator that came under the shelter of the Fourteenth Amendment.

In *Board of Regents* v. *Roth, supra,* 408 U.S. at page 575 [33 L.Ed.2d at pages 559-560], the Supreme Court explicitly found that a teacher subject to dismissal at the will of his employers did not have a liberty interest in his position, despite the fact that nonretention would make him less attractive to other employers. (See also *Jablon* v. *Trustees of California State Colleges* (9th Cir. 1973) 482 F.2d 997, 1000.) In the instant case appellant is in a more enviable situation. He is not under the necessity of looking for other employment since he is tenured as a classroom teacher.

---

[5]By implication, *Bouquet* overrules the contrary holding of *Campbell* v. *Board of Dental Examiners* (1975) 53 Cal.App.3d 283, 286 [125 Cal.Rptr. 694], on which appellant relies.

(Ed. Code, § 13314.3.) It necessarily follows that appellant is less severely stigmatized by reason of his transfer than was the appellant in *Roth*.

Appellant, however, suggests that *Goss* v. *Lopez* (1975) 419 U.S. 565 [42 L.Ed.2d 725, 95 S.Ct. 729], established a different, more liberal standard for determining whether a liberty interest exists. In *Goss*, students faced temporary suspension without hearing on charges of misconduct which could "seriously damage" their reputations, and later interfere with educational and employment opportunities. The high court held that a student's legitimate entitlement to a public education was a property interest that could not be taken away without due process.[6] *Goss* therefore has no application to the instant case since the standards to be followed here were first laid down in *Roth*, and later reaffirmed in *Bishop*.

Appellant makes a further contention; namely, that he is entitled to reinstatement because the statement of reasons for his reassignment was inaccurate and did not comply with Education Code section 13314.7. This statute provides: "Whenever a person employed in an administrative or supervisory position requiring certification qualifications is transferred to a teaching position, the governing board of the school district shall give such employee, when requested by him, a written statement of the reasons for such transfer."

When respondents transferred the appellant, he requested a statement of reasons, and was given the following: "Due to the financial condition of the district, the closing of one of our schools, and a desire to realign *the administrative structure, it was necessary to reduce our administra-tive staff. After a review of all administrators and administrative positions, it was decided that based upon the above considerations you be reassigned to a classroom teaching position."

Appellant contends that these reasons were false, and that he is entitled to a statement of the real reasons for the transfer.

---

[6]To similar effect, see *Shuffer* v. *Board of Trustees* (1977) 67 Cal.App.3d 208 [136 Cal.Rptr. 527], cited by appellant after the oral argument. The California court held in *Shuffer* that a student is entitled to an evidentiary hearing, notwithstanding the general rule of judicial nonintervention in scholastic affairs, upon allegations in his petition for a writ of mandate that university officials have arbitrarily and capriciously deprived him of a significant constitutionally protected property or liberty interest, to wit, the right to an education. As heretofore explained, however, an administrator's expectation of continued employment in his promotional level is not a constitutionally protected property or liberty interest.

■ For purposes of demurrer, factual allegations are deemed admitted. (*Alcorn* v. *Anbro Engineering, Inc.* (1970) 2 Cal.3d 493, 496 [86 Cal.Rptr. 88, 468 P.2d 216].) Appellant alleged that the basic reason stated for his transfer—reduction of the administrative staff—was not supported by the facts. He alleged that although one of the schools in the district had indeed closed, another principal in the district had resigned, leaving a position open. He further alleged that at least one other person, not previously serving in an administrative capacity, had been promoted to the position of principal. During oral argument before the trial judge respondents admitted these allegations. These allegations and admissions now clearly indicate that the administrative staff was not in fact reduced. Nevertheless, the trial court found that "the statement of reasons given to the plaintiff by the defendant Board were bona fide and not spurious." Presuming, as this court must, the truth of appellant's allegations, the trial court's finding is certainly questionable.

■ But if we are to assume arguendo that respondents provided appellant with an inaccurate statement of reasons for his transfer, the next question is what would be appellant's remedy? Appellant argues, as heretofore noted, that respondents' failure to comply with the requirements of Education Code section 13314.7 entitles him to reinstatement. He postulates that reinstatement is necessary because respondents might not indeed have a legally adequate set of reasons. However, except when the reason is one that impinges upon constitutional rights, *any* reason, no matter how trivial, is sufficient. In *Bogacki* v. *Board of Supervisors* (1971) 5 Cal.3d 771, 781 [97 Cal.Rptr. 657, 489 P.2d 537], for example, a county employee terminable at will by his supervisor contested his dismissal, arguing that it was " 'arbitrary and capricious and without just cause.' " He had been given a statement of reasons for the dismissal, which a trial court had subsequently found to be not supported by the evidence. The court declined to reinstate the employee. In effect, the court, speaking through Justice Sullivan, found that in cases involving an employee who serves at the pleasure of the appointing authority, he may be removed without any "judicially cognizable good cause," even if the action may be deemed "arbitrary and capricious." (*Id.,* at p. 781.) "As we understand it the argument is that an absolute power of dismissal pertaining to public employees is forbidden by due process insofar as it permits a dismissal that is 'arbitrary and capricious and without good cause.' " (*Id.,* at p. 781.) "It is true, of course, . . . that public employment—even that of a probationary employee or one serving at the pleasure of the appointing authority—may not be conditioned upon a waiver of constitutional rights . . . . However, it is quite another thing to assert—as

petitioner does—that . . . [a dismissed employee] has the right to be reinstated . . . unless *the appointing authority* is able to demonstrate judicially cognizable good cause for dismissal. This would be tantamount to saying that a public agency *cannot employ* persons subject to removal at *its* pleasure, for if judicially cognizable good cause is requisite to removal in all cases there can be no wholly subjective power of removal in the agency. [¶] . . . Only when such a public employee can show that his employment has been unjustifiably conditioned on the waiver of his constitutional rights will the courts intervene and give relief." (*Id.,* at pp. 782-783.)

ACSA in its amicus brief points to *Barton v. Governing Bd., supra,* 60 Cal.App.3d 476, as an authority supposedly in support of appellant's position. However *Barton* merely held that failure to give notice of reassignment before the expiration of the deadline specified in Education Code section 13443.6 compelled the reinstatement of a vice-principal to his former position. Section 13443.6 expressly requires that a certificated employee holding a position requiring an administrative or supervisory credential be retained in his position for the following school year unless given written notice to the contrary not later than March 15th. Appellant received the statutory notice on March 1st. *Barton* is therefore inapplicable to the present case.

It does not follow, however, that no remedy is available for a patently false statement of reasons under Education Code section 13314.7. To hold otherwise would render meaningless the statutory requirement. It therefore appears that the appropriate remedy for noncompliance with section 13314.7 is a demand for a new and accurate statement of reasons. This may not always be helpful to the employee, however, since in some instances a more candid and detailed statement of reasons may be more detrimental to the employee's reputation and future employment possibilities than the original. The original, however unwisely, may have been toned down somewhat to avoid unnecessary embarrassment or hardship. As a general rule, however, it may be very helpful to the employee to know exactly why he was downgraded. If the transfer is related to something other than incompetence, such as a simple personality conflict, or an intangible loss of trust, or a feeling that another person would be better, the employee is placed in a better position in seeking future employment in an administrative capacity. An unvarnished statement of reasons can also be beneficial to the employee in other respects. "It might also be argued that to require a hearing and a statement of reasons is to require a useless act, because a government

bent on denying employment to one or more persons will do so regardless of the procedural hurdles that are placed in its path. Perhaps this is so, but a requirement of procedural regularity at least renders arbitrary action more difficult. Moreover, proper procedures will surely eliminate some of the arbitrariness that results, not from malice, but from innocent error. . . . When the government knows it may have to justify its decisions with sound reasons, its conduct is likely to be more cautious, careful, and correct." (*Board of Regents* v. *Roth, supra,* 408 U.S. at pp. 591-592 [33 L.Ed.2d at p. 569] [dis. opn. of Justice Marshall]; see also *Lucas* v. *Board of Education* (1975) 13 Cal.3d 674, 679 [119 Cal.Rptr. 462, 532 P.2d 110] [citing with approval].)

Even where an employer has broad discretion, a requirement that he be obliged to reduce his reasons for terminating a particular employment relationship to writing might make him more cautious in seeing that his discretion is being wisely exercised.

Since neither appellant nor ACSA has been able to persuade us that the board of trustees acted beyond its powers in making the change that it did in appellant's employment status, the judgment is affirmed.

Sims, Acting P. J., and Elkington, J., concurred.