[No. E004733, Fourth Dist., Div. Two. Oct. 28, 1988.]

BARBARA HAHN, Plaintiff and Appellant, v.
BOARD OF EDUCATION OF THE ALVORD UNIFIED
SCHOOL DISTRICT et al., Defendants and Respondents.

COUNSEL

James W. Briggs for Plaintiff and Appellant.

Best, Best & Krieger, Meredith A. Jury and Victor L. Wolf for Defendants and Respondents.

OPINION

McDANIEL, J.—This appeal calls for a determination of the legal consequences of the amendment in 1977 of section 44896 of the Education Code.[1] That section requires that a school district (respondents here) employing a person "in an administrative or supervisory position requiring certification qualifications" (plaintiff, referred to as petitioner here) must have first performed a so-called Stull Act evaluation before such person can be transferred to a teaching position, if the transfer be for incompetency. Petitioner Barbara Hahn, arguably without the district's compliance with section 44896, was reassigned from the position of Coordinator of Special Education Services of Alvord Unified School District to that of a classroom teacher, to begin the 1987-1988 school year. About five months after this disputed action was taken, petitioner sought a writ of mandate from the superior court to compel her *reinstatement* in the administrative position from which she had been transferred. Her petition was denied, and this appeal followed. For the reasons hereinafter stated, we shall reverse the judgment with directions.

SYNOPSIS OF ADMINISTRATIVE AND TRIAL COURT PROCEEDINGS

At the time petitioner was reassigned, as above noted, she was given the requisite notice prescribed by section 44951 of the Education Code[2] on or about March 10, 1987. Accompanying the section 44951 notice was a list of

---

[1] After its amendment in 1977 to add the second sentence, section 44896 of the Education Code provides, "Whenever a person employed in an administrative or supervisory position requiring certification qualifications is transferred to a teaching position, the governing board of the school district shall give such employee, when requested by him, a written statement of the reasons for such transfer. If the reasons include incompetency, an evaluation of the person pursuant to Article 11 (commencing with Section 44660) of Chapter 3 of this part shall have been completed not more than 60 days prior to the giving of the notice of the transfer."

[2] Section 44951 of the Education Code provides in pertinent part, "Unless a certificated employee holding a position requiring an administrative or supervisory credential is sent written notice deposited in the United States registered mail with postage prepaid and addressed to his last known address by March 15 that he may be released from his position for the following school year or unless the signature of such an employee is obtained by March 15 on such written notice that he may be released from his position for the following year, *he shall be continued in such position.* . . ." (Italics added.)

30 reasons for the reassignment, even though petitioner had not requested them as was her prerogative under Education Code section 44896. Of significance, as urged by respondents, is the fact that neither the word "incompetent" nor the word "incompetence" appeared in the recitation of any of these 30 reasons. As interpreted by respondents, the substance of these recited reasons had nothing to do with incompetence, but instead represented "unwillingness on the part of [petitioner] to maintain a professional demeanor with teachers, parents, and staff involved in the special education program."

Thereafter, petitioner sought and was accorded a hearing before the board of respondent Alvord Unified School District. At the conclusion of that hearing, the board voted to affirm the decision to reassign petitioner to a teaching position. About five months later, petitioner, by means of a petition for a writ of mandate, filed in superior court, challenged the legality of the reassignment and, as noted, sought relief in the form of *reinstatement* in her administrative position. In response, respondent urged that the petition should be denied on the ground of laches, citing the five-month delay. Respondent also addressed petitioner's substantive arguments as to the reassignment's legality.

After points and authorities, supported by declarations, were filed by both sides, the matter was briefly argued to the court on only the laches issue. After the matter was submitted, the trial court denied the petition. The minute order did not state any reasons for the denial, and a judgment reflecting such decision was thereafter entered.

## DISCUSSION

Petitioner, in pursuing her appeal, makes several contentions. First, she argues that "even a cursory examination of the 30 alleged reasons for the transfer make[s] it clear that they include 'incompetency' as perceived by Respondents, thus bringing into play the second sentence of § 44896." Proceeding on the assumed truth of her first contention, petitioner then points to respondents' failure to accomplish the requisite Stull Act evaluation less than 60 days before her reassignment,[3] contending therefore that the transfer was invalid. Third, petitioner argues that the trial court's denial of her petition cannot be properly based on the doctrine of laches, for to do so would represent an impermissible deprivation of her constitutional, due-process rights.

Respondents' contentions, in effect, are a reversed mirror image of petitioner's contentions, i.e., that the reasons for her reassignment did not

---

[3] Petitioner received her last Stull Act evaluation in 1985.

involve "incompetency" as that term is used in the statute and that hence a Stull Act evaluation was not a prerequisite to the transfer. Otherwise, respondents contend that the trial court could have properly denied the petition based upon laches.

■ As we see the record, accepting for purposes of argument that the "30 reasons" do imply a charge of incompetency, the first issue to be resolved is whether the transfer was improper. If we determine the transfer to have been improper, then the pivotal question to be resolved becomes whether petitioner is entitled to *reinstatement* as prayed for in her petition.

Section 44660 et seq. of the Education Code includes a recital that it is the intent of the Legislature that the boards of school districts establish a uniform system for evaluating the performance of so called certificated personnel, i.e., teachers and administrators.[4] A fair reading of these sections of the Education Code indicates, not only that the establishment of such systems is mandatory, but also, once established, that these evaluations are to be performed at prescribed intervals. As provided by section 44664 of the Education Code, each certificated employee *"shall"* be evaluated on a continuing basis "at least every other year for personnel with permanent status."

In cases decided before January 1, 1978, the effective date of the amendment to section 44896, which, as noted, added the last sentence to the section as it now reads, it was held that the failure to perform a Stull Act evaluation was not fatal to a transfer of certificated personnel. In *Anaclerio v. Skinner* (1976) 64 Cal.App.3d 194 [134 Cal.Rptr. 303], a school principal who had been reassigned to a classroom teacher position sought a writ of mandate to compel his reinstatement. A Stull Act evaluation had been performed the previous year, and in connection with the notice of reassignment the principal was given a letter which in only general terms described the reason for his reassignment and that it was in the best interest of the school district to do so. The petition was denied, and an appeal from the judgment was affirmed. In doing so, the *Anaclerio* court said, "In holding that the Stull Act does not restrict reassignment of an administrator, we by no means emasculate that act. The right to annual evaluation remains, and is enforceable by mandate if not granted on request. Plaintiff would have us add to the act a provision the Legislature did not make. That omission is emphasized by the absence of any reference to Stull Act evaluation in the statutes governing removal and reassignment of administrators.

"The parties differ as to whether the Stull Act has any application to administrative personnel. A 1975 amendment (Ed. Code, § 13487, subd.

---

[4] Because Senator John Stull sponsored the legislation here involved, these evaluations have come to bear his name, i.e., Stull Act evaluations.

(c)) makes clear that it does so apply now. We need not and do not determine whether it so applied at the time here in issue, because we have concluded above that the evaluation provisions of the Stull Act do not create a condition precedent to a reassignment which terminates a purely administrative assignment." *Anaclerio* v. *Skinner, supra,* (64 Cal.App.3d at pp. 197-198.)

Also, before the foregoing amendment was effective, *Grant* v. *Adams* (1977) 69 Cal.App.3d 127 [137 Cal.Rptr. 834], was decided. That case also involved a challenge by an administrator to the legality of his reassignment to a classroom teaching position. The challenge was based in part on constitutional grounds which, on appeal, the court discounted. Otherwise, and of interest here, was the aggrieved administrator's reliance on section 13314.7 of the Education Code which was renumbered as section 44896 in 1977, in addition to being amended as already noted. This section, both before and after the amendment, requires, in connection with a reassignment of the kind which here occurred, that the district, if requested, give a statement of reasons for the transfer.

Against this statutory background, the administrator in *Grant* argued, because the reasons given for his transfer were false, that the district had no authority to reassign him. After also discounting the challenge to the district's authority to make the transfer, the court said, "It does not follow, however, that no remedy is available for a patently false statement of reasons under Education Code section 13314.7. To hold otherwise would render meaningless the statutory requirement. It therefore appears that the appropriate remedy for noncompliance with section 13314.7 is a demand for a new and accurate statement of reasons. This may not always be helpful to the employee, however, since in some instances a more candid and detailed statement of reasons may be more detrimental to the employee's reputation and future employment possibilities than the original. The original, however unwisely, may have been toned down somewhat to avoid unnecessary embarrassment or hardship. As a general rule, however, it may be very helpful to the employee to know exactly why he was downgraded. If the transfer is related to something other than incompetence, such as a simple personality conflict, or an intangible loss of trust, or a feeling that another person would be better, the employee is placed in a better position in seeking future employment in an administrative capacity. An unvarnished statement of reasons can also be beneficial to the employee in other respects. 'It might also be argued that to require a hearing and a statement of reasons is to require a useless act, because a government bent on denying employment to one or more persons will do so regardless of the procedural hurdles that are placed in its path. Perhaps this is so, but a requirement of procedural regularity at least renders arbitrary action more difficult. Moreover, proper procedures will surely eliminate some of the arbitrariness that

results, not from malice, but from innocent error. . . . When the government knows it may have to justify its decisions with sound reasons, its conduct is likely to be more cautious, careful, and correct.' (*Board of Regents* v. *Roth, supra,* 408 U.S. at pp. 591-592 [33 L.Ed.2d at p. 569] [dis. opn. of Justice Marshall]; see also *Lucas* v. *Board of Education* (1975) 13 Cal.3d 674, 679 [119 Cal.Rptr. 462, 532 P.2d 110] [citing with approval].)" (*Id.,* at pp. 138-139.)

That brings our analysis to the impact of the 1977 amendment to section 44896 which added the sentence, "If the reasons include incompetency, [a Stull Act] evaluation of the person . . . shall have been completed not more than 60 days prior to the date of the notice of the transfer." (Ed. Code, § 44896.)

Petitioner flatly asserts that Senator Stull took the necessary steps to bring about the amendment to section 44896 (which added the second sentence of its present content) with reference to the result reached in *Anaclerio,* and the reasons therefor. According to petitioner, "under these circumstances it is obvious that the legislature intended to change the rule of law decided by the *Anaclerio* court."

Petitioner then proceeds to spin an elaborate and persuasive argument, predicated upon an exercise in statutory construction in light of judicial decisions to which an amended statute is seen as responding, that a Stull Act evaluation is *mandatory* in connection with any transfer contemplated by section 44896. We agree that such an evaluation is mandatory in two respects. It must be performed every other year for persons with permanent status, and it must be accomplished within no less than 60 days before any transfer can be undertaken within the ambit of section 44896, *if that transfer be for incompetency.*

As a consequence, the reassignment of petitioner without the requisite Stull Act evaluation was invalid, accepting of course that one of the reasons for the transfer was incompetency. In this latter connection, we observe, somewhat parenthetically, that to afford the most practical disposition of the appeal, we shall accept, without elaborate analysis, petitioner's contention that included among the 30 reasons for petitioner's transfer was a charge of incompetency.

■ However, the question remains as to what shall be the consequences of respondents' legally defective attempt to reassign petitioner. ■ Both *Anaclerio* and *Grant* make abundantly clear that certificated personnel have no vested right as such in any particular position. *Grant* in

particular noted that ". . . administrators have no tenure in their positions . . ." (*Grant* v. *Adams, supra,* 69 Cal.App.3d 127, 133.)

 Moreover, in *Grant,* as stated in the quotation set out earlier, even if the administrator were entitled to a valid statement of reasons on the occasion of his transfer, in the absence of his having been provided such reasons, *his remedy would not be reinstatement,* but actual receipt of a proper catalog of reasons.

In view of the language used, it is our view that there was nothing in the 1977 amendment of section 44896 to indicate that the Legislature intended to create a new, vested or tenured right in administrative posts held by certificated personnel. We perceive the legislative intent to have been only to expand the procedural formalities which must accompany a transfer, of the kind occurring here, to include a Stull Act evaluation. In other words, in the face of the plain language of *Grant,* which defines the administrator's remedy as *not including reinstatement,* it would have been easy enough for the Legislature to specify a right to reinstatement in the instance of a transfer without a Stull Act evaluation. The Legislature did not do so, and thus we can assume that it did not intend by the 1977 amendment to section 44896 to create a vested right in so-called administrative positions requiring certification qualifications.

Reinforcing our view of the matter is the Legislature's choice, in responding to *Anaclerio,* to amend section 44896 and not section 44951. The latter section provides, unless a certain notice be given the certificated employee by March 15, indicating he shall be released from his position for the following year, that "he shall be continued in such position." (Ed. Code, § 44951.) Compliance with the precise formalities of this section has been held to be jurisdictional. (*Hoyme* v. *Board of Education* (1980) 107 Cal.App.3d 449 [165 Cal.Rptr. 737].) In affirming the trial court's order which denied the school board's motion for summary judgment the *Hoyme* court said, "[t]he requirement of proper notice in accordance with the section [44951] is jurisdictional; unless such notice is given, the reassignment of a principal to a teaching position is ineffective . . . ." (*Id.,* at pp. 454-455.) In sum, if the Legislature had intended to make The Stull Act evaluation a *jurisdictional* prerequisite to reassignment, it would have been an easy matter to amend section 44951, which has jurisdictional attributes, rather than section 44896, which *Grant* held does not.

Accordingly, petitioner's remedy is similar to that set forth in *Grant.* There the court said, "It therefore appears that the appropriate remedy for noncompliance with [then] section 13314.7 is a demand for a new and

accurate statement of reasons." (*Grant* v. *Adams, supra,* 69 Cal.App.3d 127, 138.)

Applying the *Grant* scenario to the facts here, in view of the failure of respondents to comply with section 44896, requires fashioning of a practical solution which recognizes petitioner's statutory rights and yet recognizes respondents' need to deal with an employee whom they have decided is ill-fitted for the administrative position from which she was removed.

It is evident the statutory purpose of section 44951 is to afford the certificated employee a measure of security in terms of year-to-year employment. In other words, if a school district does not intend to renew a teacher's contract for the coming year, the statute requires a notice of intent not to reemploy by March 15 to enable that teacher to gain timely access to the job market. If that notice be not given, the teacher has a right to stay on for another year, for to permit otherwise would put the teacher at a serious disadvantage in finding another position. That is why section 44951 has been accorded jurisdictional attributes in such cases as *Hoyme.*

However, section 44896 has a different purpose. It is involved with the more subjective matter of apprising the certificated person of his or her level of professional performance and competence. These things evolve without regard to time constraints. As a consequence, petitioner here could benefit from a Stull Act evaluation at any time, even though, as a practical matter, compliance with these two sections usually results in their being implemented at the same time.

Stated from a different perspective, it is not going to work to petitioner's long-term advantage to reinstate her. It is inevitable, if the remedy of reinstatement were to be forced on respondents, that they would then, for the next succeeding school year, give the section 44951 notice after having performed timely the Stull Act evaluation. Thus, petitioner would ultimately be right back in the classroom with no real benefits having accrued to either of the antagonists during the interval.

Thus, in view of the foregoing, the proper remedy is to require respondents forthwith to accomplish a Stull Act evaluation, and, because of the failure to do so timely in compliance with section 44896, to compensate petitioner for any diminution in salary suffered as a result of the transfer.

■ We note that respondent urges that the judgment below nonetheless can be affirmed on the basis of laches, because of petitioner's delay in filing her petition for a writ of mandate. Her petition was filed five months after respondent's board affirmed the decision to reassign petitioner to the

classroom. According to respondent, it was prejudiced by petitioner's delay because, according to the declaration of Norman C. Guith, filed a few days after Ms. Hahn's petition, "Since Ms. Hahn's reassignment in March, 1987, the District hired Ms. Roice to replace her as Coordinator. . . . [and] [t]he District does not need and cannot use two coordinators."

However, mere prejudice caused by delay will not support a claim of laches. As the court in *Conti* v. *Board of Civil Service Commissioners* (1969) 1 Cal.3d 351, 359 [82 Cal.Rptr. 337, 461 P.2d 617] held, "The defense of laches requires *unreasonable* delay plus either acquiescence in the act about which plaintiff complains or prejudice to the defendant resulting from the delay." (Italics added, fns. omitted.)

The unreasonableness of delay cannot be considered in a vacuum, but must be measured against the applicable statute of limitations and the practicalities included in deciding whether to proceed with a lawsuit. Here, a three-year statute of limitations applied to petitioner's mandamus action. (See *Lerner* v. *Los Angeles City Board of Education* (1963) 59 Cal.2d 382, 389 [29 Cal.Rptr. 657, 380 P.2d 97]; *Conti* v. *Board of Civil Service Commissioners* (1969) 1 Cal.3d 351, 357, fn. 3.) While such actions may be barred by laches after delays far less than the limitations period (*ibid.*), no case we have found has upheld laches as a defense for a delay of only five months. Given the concerns which a plaintiff must weigh before undertaking legal action (such as the potential effect of litigation on one's future career, the chances of success, the availability of alternative employment and the expense involved), we cannot say that a five-month delay is unreasonable.

Furthermore, although the fact that a plaintiff's employer has filled the plaintiff's position may be a factor in determining that the employer has been *prejudiced* by any delay, care must be taken not to use the replacement as a factor in determining whether plaintiff's delay was *unreasonable*. If such were not the rule, an employer could seriously affect the amount of time, if any, a plaintiff would have to decide whether or not to proceed with litigation by immediately filling his or her position. For example, here, Guith's declaration did not indicate whether Ms. Roice was hired the day after Ms. Hahn was notified she would be reassigned, the day before his declaration was filed, or sometime in between. Surely respondent could not argue, if it had hired Ms. Roice within a month of Ms. Hahn's reassignment, that a delay of a month in filing a petition was therefore unreasonable.

### DISPOSITION

The judgment is reversed, and the trial court is directed to enter a new and different judgment authorizing issuance of a writ of mandate, addressed

to respondents, wherein they are instructed to accomplish a Stull Act evaluation of petitioner forthwith, and, should there have been any diminution of petitioner's salary as a consequence of the transfer, to remit to petitioner any such diminution, aggregated from the time it began until the Stull Act evaluation is completed as provided by statute. All parties shall bear their own costs on appeal.

Campbell, P. J., and Hews, J., concurred.