[Civ. No. 63842. Second Dist., Div. Three. Mar. 2, 1983.]

DANIEL ALBA et al., Plaintiffs and Respondents, v.
LOS ANGELES UNIFIED SCHOOL DISTRICT et al.,
Defendants and Appellants.

COUNSEL

Ron Apperson and Howard Friedman for Defendants and Appellants.

Lawrence B. Trygstad and Richard J. Schwab for Plaintiffs and Respondents.

OPINION

**LUI, Acting P. J.**—Appellants Los Angeles Unified School District (District) and Governing Board of the Los Angeles Unified School District (Board) appeal from the judgment of the superior court granting United Teachers—Los Angeles (UTLA) and eight individuals[1] represented by UTLA a peremptory writ of mandamus compelling the appellant Board to set aside its decision dated May 15, 1980, dismissing the eight respondents as employees of the District and further awarding respondents costs and attorney's fees. For the reasons stated herein, we conclude that the trial court erred in granting judgment in favor of respondents.

### STATEMENT OF FACTS AND PROCEEDINGS BELOW

Respondents were teachers hired by the appellants for the 1979-1980 school year as probationary teachers. During this school year, the District was experiencing a shortage of fully qualified secondary social studies teachers and contracted with respondents to be probationary employees for the 1979-1980 school year. Under the terms of the contracts, the District agreed to hire respondents as probationary employees for the following school year, on the condition that they take and pass the District's secondary social studies subject field examination (examination) during the 1979-1980 school year. Each of the

---

[1]We shall refer to the eight individual respondents as the respondents in this opinion. UTLA was stricken as a petitioner from the action below upon appellants' motion contending it was not a proper party to the suit.

respondents agreed to be employed on this basis and each signed an employment contract to that effect.[2] The examination referred to in each of the respondents' contracts was the secondary social studies examination. The purpose of the examination, which consisted of 100 multiple choice questions, is to maintain a minimum standard of subject field knowledge for teachers in the district.

The District printed an eight-page description of its competency examination process for secondary school teachers entitled "SECONDARY TEACHER EXAMINATION." Included in this examination description on the eighth page was the following statement pertaining to secondary social studies teachers: "SOCIAL STUDIES [¶] A valid California Secondary Teaching Credential with a social science authorization and twenty semester hours of course work in the social sciences, or the California General Secondary Credential and twenty semester hours of course work in the social sciences. At least one semester of teaching experience or one practice teaching assignment at the secondary level in the social science field. It is desirable that college course work include United States history, world history (both western and non-western civilization), United States government, geography, economics, and international relations. The written test covers United States history, government, and geography, world history and geography, economics, international relations and current affairs, and methods and techniques of teaching social science."

The examination was formulated by a committee composed of the District's secondary social studies teachers recommended and selected by the District's instructional specialists in the subject area. This same committee determined the points necessary to pass the examination based upon what it determined to be the minimum background knowledge considered necessary to teach a particular subject effectively. Efforts were made to establish a male-female and ethnic balance on the committee, as well as representation of all geographical areas within the District. In addition, the District retained an independent consultant who was charged with validating the examination to determine whether

---

[2]For example, the contract of employment of Daniel Alba states that District "offers you employment as a Conditional teacher of Secondary Social Studies . . . effective September 10, 1979 and ending June 13, 1980." The contract stated a date of offer of May 24, 1979, and set forth the terms of "ACCEPTANCE OF OFFER." Paragraph 1 of the Acceptance of Offer terms states, "*I have read the reverse side of this form which is a part of this contract* (Please initial [initialed] ). I understand the implications of my signature in this contract and agree to the conditions of employment described above, below, and on the reverse side. . . . [¶] 8. If this offer is for a conditional contract I hereby apply for the next District examination in the subject matter category and/or level of this contract. If I have not received information concerning the date and location of this examination before next February 1st I will notify the Personnel Division." On the reverse side of the form, was contained the following: "3. RENEWAL . . . [¶] b. A contract for a conditional employee ends with the date shown on the contract. A probationary contract for the following school year can be issued only if the employee has taken and passed the examination in the subject matter category and/or grade level shown on the contract."

or not the test actually reflected the social studies curriculum utilized in the District's classrooms.[3]

Prior to November 9, 1979, the minimum score required to pass the examination was 59 out of a possible 100. Effective November 9, 1979, a revised examination was implemented requiring a minimum score of 65 out of a 100 possible points to pass. The examination utilized prior to November 1979 contained questions in all of the areas set forth in the published description referred to above except "methods and techniques of teaching social science." The revised examination implemented in November 1979 covered the described areas in the description with the exception of "methods and techniques" and "current affairs."

The record does not contain any evidence that respondents were aware of or relied on the examination description. In fact, the record reflects that at least two of the respondents testified that they did not recall ever seeing an examination description.

Each of the respondents took the examination at least once during the 1979-1980 school year and each failed by margins ranging from 7 to 46 points.[4]

As a result of the respondents' failure to pass the examination, the District gave them each notice pursuant to Education Code section 44949[5] that their services would not be required for the ensuing year.

Respondents requested a hearing pursuant to section 44949, subdivision (b).[6] An administrative hearing was conducted before an administrative law judge (ALJ) from the office of administrative hearings, who after the hearings,

---

[3]In our view, these procedures used to develop the examination were fair. There is no notion whatsoever that the examination was slanted in such a way so as to favor any particular applicant or applicants.

[4]Respondents' scores on the examination administered prior to November 9, 1979 (pass point of 59) were as follows: Alba, 49; Beck, 44; Dennis, 13; Firman, 40; Martin 52; Murray, 47; Reed, 49 and 48. Respondents' scores on the revised examination which was effective November 9, 1979 (pass point of 65) were as follows: Alba, 53; Beck, 53; Dennis, 30; Motzny, 44; Murray, 38.

[5]Hereinafter all references will be to the Education Code unless otherwise indicated.

Section 44949, subdivision (a), states in pertinent part as follows: "No later than March 15 and before an employee is given notice by the governing board that his services will not be required for the ensuing year, the governing board and the employee shall be given written notice by the superintendent of the district or his designee, . . . that it has been recommended that such notice be given to the employee, and stating the reasons therefor. [¶] If a probationary employee has been in the employ of the district for less than 45 days on March 15, the giving of such notice may be deferred until the 45th day of employment and all time period and deadline dates herein prescribed shall be coextensively extended."

[6]Section 44949, subdivision (b), states in pertinent part: "The employee may request a hearing to determine if there is cause for not reemploying him for the ensuing year. A request for a

rendered a proposed decision dated April 29, 1980, which included a determination that "[c]ause does not exist pursuant to Education Code section 44949 for not reemploying all respondents . . . for the ensuing school year." The ALJ's proposed decision included special rulings and findings which stated in summary that the notices that were provided to each of the respondents indicating the areas of questions on examination was misleading because no questions were asked on the examination in the area of "methods and techniques of teaching social science" and in the examination administered subsequent to November 9, 1979, there were no "current event" questions. The proposed decision states: "Thus, respondents could not have effectively and competently prepared for the examination and may have spent a disproportionate amount of time studying areas in which no questions were asked. Additionally, it was not established that notice was ever given to any of the respondents that the taking and passing of the National Teachers Examination ['NTE'] in social science would be accepted as compliance with their contract terms." None of the respondents had taken the NTE nor was the taking and passing of the NTE a condition of their contracts or a requirement of any kind for any teacher employed by the District.

Pursuant to section 44949, subdivision (c),[7] the ALJ's proposed decision was received and considered by the Board for the purpose of making a final determination. Prior to rendering its final determination, the Board advised each respondent of a staff recommendation that they be terminated. Respondents were invited to file with the Board written statements as to why the ALJ's decision should not be overturned.

On May 15, 1980, the Board considered the ALJ's proposed decision and determined that the evidence justified termination of the respondents at the conclusion of the school year. Notice of the Board's decision was sent to respondents on this same date.

---

hearing must be in writing and must be delivered to the person who sent the notice pursuant to subdivision (a), on or before a date specified therein, which shall not be less than seven days after the date on which the notice is served upon the employee. If an employee fails to request a hearing on or before the date specified, his failure to do so shall constitute his waiver of his right to a hearing. The notice provided for in subdivision (a) shall advise the employee of the provisions of this subdivision." Section 44949, subdivision (c), specifies that the hearing shall be made pursuant to Administrative Procedures Act set forth in Government Code section 11500 et seq.

[7]Section 44949, subdivision (c), reads in pertinent part as follows: ". . . The proposed decision shall be prepared for the governing board and shall contain a determination as to the sufficiency of the cause and a recommendation as to disposition. However, the governing board shall make the final determination as to the sufficiency of the cause and disposition. None of the findings, recommendations, or determinations contained in the proposed decision prepared by the hearing officer shall be binding on the governing board or on any court in future litigation. . . ."

Respondents petitioned the superior court for a writ of mandamus pursuant to Code of Civil Procedure section 1094.5 seeking to obtain judicial review of the Board's decision. Subsequently, the superior court entered judgment granting respondents a peremptory writ of mandamus. The trial court's pertinent findings of fact are as follows: "5. Each [respondent] was employed by the [appellants] under individual written contracts which provided that 'a probationary contract for the following school year can be issued only if the employee has taken and passed the examination.' None of the petitioners passed the examination in social science. [¶] 6. The [appellants] in April, 1979, announced the contents of the Social Science Examination at the secondary level. The announcement stated that 'the written test covers United States history, government and geography, world history and geography, economics, international relations and current affairs, and methods and techniques of teaching social science.' Examinations given before November, 1979, included no questions whatsoever on methods and techniques of teaching social science. The examinations after November, 1979 contained no questions on the methods and techniques of teaching social science or on current affairs. Additionally, [appellants'] announcement did not advise [respondents] that passing the National Teachers' Examination in Social Science would have satisfied the terms of their probationary contracts. . . . [¶] 8. The examination given to [respondents] pursuant to the announcement thereof constituted a substantial and irremediable breach by the School District of its contract with each petitioner. . . . [¶] 10. [Appellants] abused their discretion in not reemploying [respondents] for the school year 1980-81. . . . [¶] 12. The decision in this administrative proceeding was the result of arbitrary or capricious conduct on the part of [appellants] and their agents acting in their official capacity as follows: [¶] [Appellants] in breach of their contract with the individual [respondents] administered an examination that was not devoted to the subjects included in the announcement of said examination in that some of the subjects included in the announcement were omitted from the examinations actually given. [Appellants'] stubborn insistence in administering an examination that omitted subjects included in the announcement was arbitrary and capricious. Said arbitrary and capricious conduct on the part of [appellants] entitle [respondents] to reasonable attorneys' fees in the sum of fifty-two hundred dollars ($5,200.00). [¶] 13. [Appellants'] failure to render a decision with findings of fact and determination of issues as required by *Government Code* § 11518 did not constitute arbitrary or capricious conduct." (Italics in original.)

The pertinent conclusions of law by the court were as follows: "1. The determination of the [appellants] to reject the Decision of the Administrative Law Judge and not reemploy [respondents] was ineffective because [appellants] did not render a decision within the meaning of *Education Code* § 44949(c), which incorporates *Government Code* § 11518, in that [appellants] did not make ex-

press Findings of Fact and Conclusions of Law as required by said sections. [¶] 2. The examination given to [respondents] pursuant to the announcement thereof constituted a substantial and irremediable breach by the District of its contract with each [respondent]. The administration by [appellants] of the written examination in social science at the secondary level violated basic concepts of fundamental fairness because the subjects included in the announcement for the examination, but omitted from the examination actually given, affected [respondents'] overall grade, which may have been a passing mark [¶] 3. Under *Education Code* § 44949(e) and (h), it is too late to give a new examination in sufficient time to dismiss failing [respondents] prior to May 15, 1980. Hence, each [respondent], . . . must be deemed 'reemployed for the ensuing school year as condition of probationary employee.' . . . . [¶] 4. [Appellants] committed an abuse of discretion by not reemploying [respondents] in the ensuing school year 1980-81 for the reasons stated above. [¶] 5. There is no substantial evidence to support the determination of the [appellants] not to reemploy [respondents]. [¶] 6. The actions of the [appellants] were arbitrary and capricious. Accordingly, [respondents] are entitled to recover costs and additionally, attorneys' fees in the total sum of $5,200.00. [¶] 7. Since United Teachers' Los Angeles was not a proper party to the proceeding sought to be reviewed herein, it does not have standing as a [respondent]. Therefore, [appellants'] Motion to Strike United Teachers' Los Angeles as a [respondent] is granted." (Italics in original.)

ISSUES ON APPEAL

Appellant makes the following contentions on appeal:

1. Respondents' failure to pass a social studies competency examination during the first year of service constitutes grounds for termination under section 44949.

2. Any deficiency in the publication regarding the examination description did not vitiate the terms of respondents' contracts in light of the absence of any evidence regarding their knowledge of the examination description or reliance thereon.

3. Any deficiency in the examination's general description was de minimis, and, in any case, did not excuse the teachers from complying with the express provisions in the contract that they pass the District's secondary social studies subject field examination.

4. The trial court's award of attorneys' fees under Government Code section 800 was erroneous.

## Discussion

### 1. *The Scope of Our Review on Appeal*

■ Even when a trial court has made its own determination on all material facts and made findings using its own independent judgment as in the present appeal, it will be the trial court's findings and not those of the administrative agency that will be reviewed on appeal.[8] (*Moran* v. *Board of Medical Examiners* (1948) 32 Cal.2d 301, 308-309 [196 P.2d 20].) The appellate court will only reverse the judgment of the superior court if it is based on an erroneous conclusion of law. (*Magit* v. *Board of Medical Examiners* (1961) 57 Cal.2d 74, 87 [17 Cal.Rptr. 488, 366 P.2d 816].) When the facts do not conflict and the issues involve proper application of a statute or administrative regulation, a reviewing court is not bound by the trial court's determination. (*Shoban* v. *Board of Trustees* (1969) 276 Cal.App.2d 534, 546 [81 Cal.Rptr. 112].)

### 2. *The District's Subject Area Competency Examination Was Fair and Any Discrepancy Between the Notice and Description Was De Minimis*

■ Both the trial court and the ALJ found that the notification of the examination was misleading; therefore, the examinaton was conducted in an arbitrary and capricious manner and was void. We do not agree with the trial court's characterization of the examination.

First, the record fails to show that respondents read the examination description as publicized by the Board.[9] However, had such a showing been made, we cannot conclude that the test was inherently unfair because it did not include each and every subject area that the examinees had been advised pursuant to the published examination description. Many examinations, including the California Bar Examination, do not in fact test all possible subject matters that the examination administrators announce. Furthermore, we cannot agree that the trial court was correct in concluding that the examination was unfair because it is entirely speculative that some or all of the respondents would have had a superior performance if all subject areas had been included. It does not necessarily follow that if the examination covered all the subject matters any or all the respondents would have passed the examination, especially in view of the wide

---

[8]Appellants urge that the trial court's review of the Board's action should be based on the substantial evidence test. We need not determine whether this assertion is correct since we reach the same conclusion under the independent judgment test.

[9]All examinees, including respondents, were exposed to constant reminders regarding the necessity of passing the subject matter examination. These reminders were in the form of memoranda, announcements in the District's newsletters, "Spotlight," and in some cases by personal letters.

margins of failure (see fn. 4, *ante*). We see no connection between the District's under-inclusive examination and the respondents' failure to pass the examination.

The examinations in question were carefully designed to test the level of accomplishment each teacher had attained in their particular subject area. The District exercised care in preparing the examination by using a committee of teachers from various geographical locations within the District, male-female balance, and ethnic diversification. The examination was screened by an independent agency to validate the examination against the curriculum actually used in the District's classrooms. Also, the District provided respondents with more than one opportunity to pass the subject area competency test. The record reflects that five of the respondents took and failed the examination more than once. Counsel for the District and the Board stipulated on the record that the District had no intention of preventing any of the respondents from retaking the test in the future and encouraged them to do so.

3. *The Presence of the Alternative National Teachers' Examination Is Irrelevant*

Respondents contend that the appellants failed to provide them notice that they could have taken the NTE as an alternative to the examination and that they were thereby prejudiced. The trial court agreed with respondents. However, we do not find this contention convincing. Although it appears that the Board adopted an internal policy to accept a passing score on the NTE in lieu of the social studies test requirement, the NTE was not the agreed-upon condition of respondents' reemployment as contained in their contract. Each of the respondent's contracts stated in connection with the acceptance of the offer made by the District that they would "apply for the next District examination in the subject matter category and/or level of this contract." Furthermore, the contract also provided that "[a] probationary contract for the following school year can be issued only if the employee has taken and passed the examination in the subject matter category and/or grade level shown on the contract." Each respondent was employed as a conditional teacher of secondary social studies. The District had decided to accept passage of the NTE as an alternative to the District's examination to facilitate the recruitment of out-of-state teachers. This alternative is and was available to all teacher applicants, including respondents. However, respondents agreed to pass the *District's* examination. The fact that the teachers had an available alternative other than the stipulated examination in their contract may not be construed to place upon the District any obligation to substitute the NTE for the District examination or to encourage the substitution of the same.

*4. The District's Failure to Issue Findings of Fact and Conclusion of Law Pursuant to Section 44949, Subdivision (c), Is Harmless*

■ Respondents allege that the determination of the District to reject the decision of the ALJ and not reemploy them was ineffective because the District did not render a decision as provided by section 44949, subdivision (c), because the Board did not make express findings of fact and conclusions of law as required by this section and Government Code section 11518.[10]

In the present appeal, the Board provided timely notice of its decision to respondents; however, it did not incorporate into such notice its findings of fact and determinations of issues in accordance with Government Code section 11518 which respondents contend is required by our Supreme Court's decision in *Lucas* v. *Board of Education* (1975) 13 Cal.3d 674 [119 Cal.Rptr. 462, 532 P.2d 110].

Lucas was employed by the Fort Bragg Unified School District as a probationary high school machine shop teacher. During his third year, the district filed and served him with a written accusation charging his "inability to control the class and maintain reasonable order and discipline," and "lack of interest in and understanding of pupils." (*Lucas, supra,* 13 Cal.3d at p. 676.) The district complied with former section 13443 and the Administrative Procedures Act. The accusations documented each of the two general charges with reference to observations and evaluations made by the school principal during Lucas' previous two and one-half years employment. The Supreme Court characterized the reported classroom situations or incidents as not being "particularly egregious" and the record "reflected what the hearing officer later concluded was a 'lack of communication' between Lucas and the principal—both of whom were, in his estimation, 'well motivated.'" (*Id.,* at p. 676.) Upon receiving a notice of the accusation, Lucas requested a public hearing to contest the charges. After the hearing, the hearing officer issued a proposed decision in which he refrained from reaching a conclusion on whether the facts constituted sufficient cause for nonretention, a matter for the school board to determine. Subsequently, the school board met and considered the hearing officer's report and heard arguments presented by counsel and by a representative of the teachers association. The board decided by a unanimous vote not to reemploy Lucas. The next day, the superintendent of the district sent Lucas a "notice of non-reemployment" informing him that he would not be rehired for the subsequent year and that the decision was based upon the board's analysis of the transcript of the hearing conducted at his request. Neither the board nor the

---

[10]Government Code section 11518 states as follows: "The decision shall be in writing and shall contain findings of fact, a determination of the issues presented and the penalty, if any. The findings may be stated in the language of the pleadings or by reference thereto. Copies of the decision shall be delivered to the parties personally or sent to them by registered mail."

superintendent made or incorporated findings of fact and determination of issues required by Government Code section 11518. Approximately one week later, Lucas sent a letter to the superintendent seeking the exact reasons for the board's refusal to rehire him. The superintendent replied that the board concluded from its study of the hearing transcript and some of the specific findings of the hearing officer that Lucas demonstrated an inability to control some of his classes and that from a reading of the transcript and some of the specifics found by the hearing officer, the board concluded that Lucas had not demonstrated an acceptable understanding of or interest in, the students of the district. Thereafter, Lucas filed a petition for a writ of mandate seeking to set aside his dismissal and to compel his reemployment for the subsequent school year. Our Supreme Court reversed the trial court's refusal to grant the writ of mandate, holding that the board's decision failed to include findings of fact and a determination of issues in compliance with Government Code section 11518.

*Lucas* states that the purpose of precise reasons for nonemployment is to (1) provide procedural steps which safeguard employees from arbitrary or careless adjudications and (2) solicit a written record which facilitates judicial review. The decision at pages 679-680 of 13 Cal.3d states, "[m]eaningful judicial reconsideration would be a hollow process in the absence of an explicit statement of factual findings and issue determinations from the administrative agency. The decision may refer to or incorporate findings and issues stated in the pleadings or in the hearing officer's report, but it must do so specifically. Sufficient specificity is not found here in the board's statement, which merely referred to an 'analysis' or 'consideration' of the hearing transcript and report."

However, unlike *Lucas,* the charges involved in the instant appeal regarding respondents' dismissal are a single allegation. Each of the respondents was charged with failing to comply with the contract terms of passing the examination. The accusation and statement of charges in the administrative hearing and all documents issued previously thereto by the District to the respondents were based upon this single allegation. Although the respondents are technically correct that the Board's decision fails to include findings of fact and determinations of issues which complies with Government Code section 11518, the record is abundantly clear that the obvious and only reason for their dismissals was their failure to pass the agreed examination. Even though the appellants failed to explain their lack of compliance with Government Code section 11518, we see no reason to return the matter to the trial court with directions that it remand the matter to the Board for specific findings on the respondents' dismissal. Such a disposition would serve no useful purpose and would obviously result in the same disposition by the Board as previously rendered. Our disposition of this appeal is not inconsistent with *Lucas* which concludes that the legislative amendment in 1969 of former section 13443 (which was reorganized into the present § 44949) indicates the Legislature's intent not automatically to compel

reinstatement and tenure of a probationary teacher who has been denied his right to a hearing. (See *Lucas, supra,* 13 Cal.3d at pp. 681-683 and *Horner* v. *Board of Trustees* (1964) 61 Cal.2d 79 [37 Cal.Rptr. 185, 389 P.2d 713].)

### 5. *The Condition of Passing the District's Examination Was Reasonable*

■ Respondents contend that the appellants could not impose any condition upon their employment and once they were hired, they could only be terminated for cause pursuant to section 44949. Respondents characterize appellants' conditional contract as an attempt to create a new classification of teachers as "conditional employees" when the only classifications of teachers permitted by the Education Code are permanent, probationary, substitute and temporary (§§ 44915 and 44916.) At oral argument, respondents' counsel conceded that the District could have made the passage of the examination a valid prerequisite for employment; however, once hired, the condition was improper. We disagree.[11]

If the condition was reasonable before the respondents were employed, it was reasonable after the employment commenced. This condition allowed the respondents time to prepare for the examination while being employed and allowed the District to meet the immediate needs for teachers due to a shortage of qualified applicants.

Finally, contrary to respondent's contention, we are of the view that the respondents' failure to pass the examination testing their skills in their subject field of teaching bears directly on their competency as teachers and further that the welfare of the District's students would be affected by the retention of teachers who are unable to demonstrate their competency by successfully passing a competency examination in the field they were engaged to teach. The failure of the respondents to pass the District's examination in the subject field of teaching constituted cause for not reemploying them under section 44949, subdivision (d).[12]

---

[11]We do not agree that the District can place unlimited conditions on teachers' contracts during a probationary period and specifically limit this holding to this single condition of passage of a subject field examination since we find this single condition reasonable.

[12]Section 44949, subdivision (d), provides as follows: "The governing board's determination not to reemploy a probationary employee for the ensuing school year shall be for cause only. The determination of the governing board as to the sufficiency of the cause pursuant to this section shall be conclusive, but the cause shall relate solely to the welfare of the schools and pupils thereof. Cause shall include termination of services for the reasons specified in Section 44955, unless a collective agreement has been entered into in accordance with Section 44959.5. The decision made after the hearing shall be effective on May 15 of the year the proceeding is commenced."

In view of our determination that the judgment should be reversed, we need not address appellant's contention regarding the attorneys' fees and costs.

For the reasons stated above, the judgment is reversed.

Potter, J., and Danielson, J., concurred.

Respondents' petition for a hearing by the Supreme Court was denied April 27, 1983.