[No. B005052. Second Dist., Div. Three. Dec. 1, 1986.]

HAL JENKINS WEBB, Plaintiff and Respondent, v.
JACK MILLER, as Interim Director, etc., Defendant and Appellant.

620

622

---

COUNSEL

John K. Van de Kamp, Attorney General, N. Eugene Hill, Assistant Attorney General, Henry G. Ullerich and John J. Crimmins, Deputy Attorneys General, for Defendant and Appellant.

Miller, Boyko & Bell and Edgar Paul Boyko for Plaintiff and Respondent.

---

OPINION

KLEIN, P. J.—Defendant and appellant Jack Miller, as Interim Director of the Department of Motor Vehicles (DMV) appeals a judgment granting Hal Jenkins Webb's (Webb) petition for writ of mandate setting aside the suspension of Webb's driver's license.

Because Webb had no right to impose any conditions on his chemical testing, his conditional consent is tantamount to a refusal. The judgment is therefore reversed.

### FACTUAL AND PROCEDURAL BACKGROUND

On August 9, 1982, Webb, a 74-year old attorney, was stopped by California Highway Patrol (CHP) Officers Howe and Skipper for weaving and holding up the flow of traffic. About 10 or 15 minutes later, CHP Officers Lambres and Sembera arrived at the scene. After performing three field sobriety tests, Webb was arrested by Lambres on suspicion of driving while under the influence of alcohol.

Webb was then taken to Parker Center in downtown Los Angeles for chemical testing. Lambres admonished Webb as to the requirements of the

implied consent law by reading aloud to him from a CHP form the following statement: "'You are required by state law to submit to a chemical test to determine the alcoholic content of your blood. You have a choice of whether the test is to be of your blood, breath or urine. If you refuse to submit to a test, or fail to complete a test, your driving privilege will be suspended for a period of six months. You do not have the right to talk to an attorney, or to have an attorney present, before stating whether you will submit [to] a test, before deciding which test to take, or during the administration of the test chosen. If you are incapable, or state you are incapable, of completing the test you choose, you must submit to and complete any of the remaining tests or test. If you refuse to submit to a test, the refusal may be used against you in a court of law.'"[1]

Webb stated he wanted to look at a card in his wallet which contained information as to the accuracy of the various tests to help him decide which test to take. Lambres declined to remove the handcuffs. Webb did not ask Lambres, or anyone else, to remove his wallet. Lambres did not offer to take the card out of Webb's wallet, because it was his practice not to touch arrestees' wallets.

After Webb stated he wanted to look in his wallet before deciding which test to undergo, Lambres readvised Webb verbatim from the CHP implied consent form. Webb again stated he wanted to look in his wallet. Lambres told Webb the handcuffs would remain. It is departmental policy to leave handcuffs on until the arrestee is inside the booking facility where the jailers are located. Webb once more requested to look in his wallet. Webb was then taken to the booking facility, where he repeated his request.

Webb was then booked for refusing to take a test. About 30 minutes after the initial advisement, Webb asked the booking officer to arrange for him to take a test. The booking officer replied it was up to the arresting officer.

---

[1] At the time of the incident, Vehicle Code section 13353 provided in pertinent part: "(a) (1) Any person who drives a motor vehicle upon a highway or upon other than a highway in areas which are open to the general public shall be deemed to have given his or her consent to a chemical test of his or her blood, breath, or urine for the purpose of determining the alcoholic content of his or her blood if lawfully arrested for any offense allegedly committed in violation of Section 23152 or 23153. The test shall be incidental to a lawful arrest and administered at the direction of a peace officer having reasonable cause to believe the person was driving a motor vehicle upon a highway or upon other than a highway in areas which are open to the general public in violation of Section 23152 or 23153. The person shall be told that his failure to submit to, or the noncompletion of, a chemical test will result in the suspension of the person's privilege to operate a motor vehicle for a period of six months."

All subsequent code section references are to the Vehicle Code, unless otherwise indicated.

Webb then shouted "I demand a test and I want some witnesses to the fact that I demand to be tested."

Lambres at the time was writing his report some 15 or 20 feet away. The booking facility is a noisy place, and Lambres did not hear Webb's demand to be tested.

In September 1982, the DMV notified Webb his driver's license was being suspended for six months pursuant to section 13353 for refusing to submit to a chemical test after being arrested for drunk driving. Webb requested an administrative hearing on the suspension. On October 25, 1982, a hearing was held before a DMV referee. On January 12, 1983, the referee issued a proposed decision which recommended the suspension be set aside, on the ground that Webb did not refuse to submit to a test. On February 16, 1983, the DMV rejected the referee's proposed decision and ordered Webb's driving privileges be suspended. The DMV held Webb "exhibited only a conditional consent . . ., which must be deemed a refusal."

On May 17, 1983, Webb filed a petition for writ of mandate (Code Civ. Proc., § 1094.5) in the superior court. The matter was heard November 8, 1983. The trial court held the DMV had abused its discretion and issued a peremptory writ of mandate directing the DMV to set aside its decision and reinstate Webb's license. By way of its statement of decision, the trial court adopted in full, page five of the referee's *proposed* decision.

That decision held, inter alia, based on the manner Webb was driving, the CHP had reasonable cause to stop him. The arrest was likewise lawful. Further, "there was a proper request for chemical testing with Mr. Webb stating that he wanted to look into his wallet for a card to help him decide which test to take. Since this request was made in the GCI [breathalyzer] room of Parker Center, *it is concluded that this was a reasonable condition* that Mr. Webb was placing on his taking of the test, and that it would have caused no inconvenience or problems to the officer. . . . Mr. Webb during the booking did obtain his wallet and determined that he did not have that card, and he therefore elected to take the blood test. At that time he had only been at the station for approximately thirty minutes. It is concluded that this was not an unreasonable period of time; and since the officer and his partner were still present and the facilities for taking blood [were] available at that police station, Mr. Webb was fully within his rights to request the blood test at that time. And it is concluded that the officers were obligated to give him that test. It is therefore concluded that Mr. Webb did not refuse to submit to chemical testing." (Italics added.)

On February 15, 1984, the DMV filed its notice of appeal.

## CONTENTIONS

The DMV contends the trial court erred in its conclusions of law in that: (1) Webb's insistence on looking at the card in his wallet prior to taking a test was a conditional agreement, and therefore a refusal to take the test; and (2) Webb's subsequent request for a test did not excuse his initial refusal.

## DISCUSSION

1. *Standard of appellate review.*

Because a driver's license is a fundamental vested right for the purpose of selecting the standard of judicial review of an administrative decision to suspend or revoke such license, and because the DMV is a statewide agency of legislative rather than constitutional origin, the trial court must exercise its independent judgment in reviewing the administrative record. (*Berlinghieri* v. *Department of Motor Vehicles* (1983) 33 Cal.3d 392, 395 [188 Cal.Rptr. 891, 657 P.2d 383]; *Bixby* v. *Pierno* (1971) 4 Cal.3d 130, 143 [93 Cal.Rptr. 234, 481 P.2d 242]; *Goodman* v. *Orr* (1971) 19 Cal.App.3d 845, 848 [97 Cal.Rptr. 226]; Code Civ. Proc., § 1094.5.)

"[W]hen a trial court has made its own determination on all material facts and made findings using its own independent judgment . . ., it will be the trial court's findings and not those of the administrative agency that will be reviewed on appeal. [Fn. omitted.] (*Moran* v. *Board of Medical Examiners* (1948) 32 Cal.2d 301, 308-309 [196 P.2d 20].) The appellate court will only reverse the judgment of the superior court if it is based on an erroneous conclusion of law. (*Magit* v. *Board of Medical Examiners* (1961) 57 Cal.2d 74, 87 [17 Cal.Rptr. 488, 366 P.2d 816].) When the facts do not conflict and the issues involve proper application of a statute or administrative regulation, a reviewing court is not bound by the trial court's determination. (*Shoban* v. *Board of Trustees* (1969) 276 Cal.App.2d 534, 546 [81 Cal.Rptr. 112].)" *Alba* v. *Los Angeles Unified School Dist.* (1983) 140 Cal.App.3d 997, 1005 [189 Cal.Rptr. 897].)

2. *Trial court erred in holding Webb's request that he be allowed to refer to the card in his wallet was "a reasonable condition."*

As indicated, the trial court concluded Webb did not refuse to submit to a test, but had merely imposed a reasonable condition on such testing.

The relevant facts here are not in conflict, making the question before us one of law. We are therefore not bound by the trial court's determination.

■ "'Our implied consent statute, including section 13353, was enacted to fulfill the need for a fair, efficient and accurate system of detection and prevention of drunken driving. [Citations.] The immediate purpose of section 13353 is to obtain the best evidence of blood alcohol content at the time of the arrest of a person reasonably believed to be driving while intoxicated. The long range purpose is, of course, to inhibit intoxicated persons from driving on the highways. [Citation.]'" (*Goodman* v. *Orr, supra,* 19 Cal.App.3d at p. 852.)

Refusals to take tests have never been excused in California on *any* ground other than officer-induced confusion. (See *McDonnell* v. *Department of Motor Vehicles* (1975) 45 Cal.App.3d 653, 658-659 [119 Cal.Rptr. 804].) It has been recognized that such ground may arise due to the "juxtaposition of the implied consent warnings (no right to refuse a test and no right to consult with or to have an attorney present during its administration) with the *Miranda*[2] admonition (right to refuse interrogation and to have an attorney present at all stages of a police interrogation, etc.), . . ." (*McDonnell* v. *Department of Motor Vehicles, supra,* at p. 658.) There is no hint of officer-induced confusion here.

■ It is established that a *conditional* consent to a test constitutes a refusal to submit to a test within the meaning of section 13353. (*Kesler* v. *Department of Motor Vehicles* (1969) 1 Cal.3d 74, 77 [81 Cal.Rptr. 348, 459 P.2d 900].) In *Kesler,* the driver's insistence upon taking all three rather than only one test was determined to be a refusal. (*Ibid.*) In reaching its holding, our Supreme Court in *Kesler* reviewed other instances of conditional consent which were found equally unavailing: conditions that a licensee's physician or attorney be present during the test (*Finley* v. *Orr* (1968) 262 Cal.App.2d 656, 667 [69 Cal.Rptr. 137]); that a licensee's physician administer the test (*Fallis* v. *Department of Motor Vehicles* (1968) 264 Cal.App.2d 373, 382 [70 Cal.Rptr. 595]); that a licensee's attorney be present during the test (*Ent* v. *Department of Motor Vehicles* (1968) 265 Cal.App.2d 936, 942-943 [71 Cal.Rptr. 726]); and that a licensee's physician be present during, or administer the test (*Westmoreland* v. *Chapman* (1968) 268 Cal.App.2d 1, 5 [74 Cal.Rptr. 363]). (*Kesler* v. *Department of Motor Vehicles, supra,* 1 Cal.3d at pp. 77-78.)

The trial court recognized "the recent cases that have come down in this area do interpret rather strictly in the area of refusal to take the test."[3]

---

[2]*Miranda* v. *Arizona* (1966) 384 U.S. 436 [16 L.Ed.2d 694, 86 S.Ct. 1602, 10 A.L.R.3d 974].

[3]See *Vann* v. *Meese* (1986) 186 Cal.App.3d 1070 [231 Cal.Rptr. 247], where the licensee contended the officer violated section 13353 because he read her the standard admonition that she could take a blood, breath, or urine test, when he knew no breath test was available

However, in finding no refusal on these facts and granting the peremptory writ, the trial court carved out a sui generis, and in our view, unwarranted exception unsupported by case law. ■ "Courts may not read into a statute an exception not incorporated therein by the Legislature [citation], unless such an exception must reasonably and necessarily be implied in order not to 'disregard or overturn a sound rule of public policy.' [Citation.]" (*Pacific Motor Transport Co.* v. *State Bd. of Equalization* (1972) 28 Cal.App.3d 230, 235 [104 Cal.Rptr. 558].) ■ A statute must be read "in light of both the objective it seeks to achieve and the evil it seeks to avert." (*People* v. *Alday* (1973) 10 Cal.3d 392, 395 [110 Cal.Rptr. 617, 515 P.2d 1169].)

Upholding "reasonable conditions" imposed by licensees would create an unworkable standard and force the officer in the field to determine on a case-by-case basis whether a licensee's request is a reasonable one. Such a reading could easily "swallow the rule" (*Hoover* v. *Agriform Chemical Co.* (1969) 268 Cal.App.2d 818, 823 [74 Cal.Rptr. 325]) of implied consent, thereby frustrating the strong public policy against drunk driving.

### a. *Webb's initial refusal not excused by subsequent request for testing.*

■ "[T]he law of implied consent mandates that an arrestee is required to submit to and complete one of the three tests upon their *first* having been offered to him by an arresting officer. [¶] . . . . [¶] . . . . It is the initial refusal which forms the basis for suspension of the driver's license under Vehicle Code section 13353. [Citation.] Once the driver refuses to take any one of the three chemical tests, the law does not require that he later be given one when he decides, for whatever reason, that he is ready to submit. [Citations.] [¶] . . . . Simply stated, one offer plus one rejection equals one refusal; and, one suspension." (*Dunlap* v. *Department of Motor Vehicles* (1984) 156 Cal.App.3d 279, 283 [202 Cal.Rptr. 729].)

Webb's conditional consent constituted a refusal. His subsequent request for testing does not alter that result.

### 3. *Webb's contentions without merit.*

### ■ a. *Testing may properly be delegated.*

At the time of the incident, section 13353 stated in part "[t]he test shall be . . . administered at the direction of a peace officer having reasonable

at the hospital to which she was taken for treatment. However, the *Vann* court found the officer's gratuitous inclusion of a breath test in his admonition had no causal effect on the licensee's refusal to take any test, and declined to set aside her license suspension.

cause to believe the person was driving a motor vehicle in violation of Section 23152 or 23153."[4]

Relying on the above language, and on *Covington* v. *Department of Motor Vehicles* (1980) 102 Cal.App.3d 54 [162 Cal.Rptr. 150] [hrg. den.], Webb argues Officer Lambres as a matter of law could not require him to undergo testing, because only Officers Howe and Skipper actually viewed him while he was driving.

*Covington* does contain language that a breath test "could only have been [administered by] the officer or officers that viewed [the arrestee] while he was driving." (*Id.*, at p. 59.) However, strictly speaking, this discussion was merely dictum as the issue in *Covington* was whether section 13353 is violated where one refuses to take a test but subsequently withdraws the refusal and a test is administered. (*Ibid.*)

We believe the sounder view is expressed in *Lee* v. *Department of Motor Vehicles* (1983) 142 Cal.App.3d 275, 281 [191 Cal.Rptr. 23], which concluded "the language in the statute requiring the test to be administered 'at the direction' of an arresting officer with reasonable cause means that the arresting officer need only order that the test be given. The statute does not say that the arresting officer must personally administer the test [fn. omitted] or even that the test must be administered in the presence of the arresting officer."[5]

In upholding delegation of testing to a nonarresting officer, *Lee* gave the statute a broad construction to avoid mischief and effect the twin legislative objects of obtaining the best evidence of an arrestee's level of intoxication and deterring drunk driving. (*Id.*, at pp. 282-283.)

We reject Webb's position that Officer Lambres' involvement in his chemical testing was improper.

■ b. *Statutory and due process arguments similarly fail.*

At the relevant time, section 13353, subdivision (f) provided: "A person lawfully arrested for any offense allegedly committed while the person was driving a motor vehicle in violation of Section 23152 or 23153 may request the arresting officer to have a chemical test made of the arrested person's

---

[4]The substance of said provision now appears at section 23157.

[5]A contrary interpretation would pose a particular obstacle to blood testing, as section 23158 allows only certain licensed medical personnel to withdraw blood for the purpose of testing alcoholic content.

blood, breath, or urine for the purpose of determining the alcoholic content of that person's blood, and, if so requested, the arresting officer shall have the test performed."

It is recognized a "refusal by police to allow one accused of intoxication to procure a timely blood test amounts to a suppression of evidence." (*Brown* v. *Municipal Court* (1978) 86 Cal.App.3d 357, 363 [150 Cal.Rptr. 216].) Such deprivation "prevents the accused from obtaining evidence necessary to his defense, and is a denial of due process of law." (*Id.*, at p. 361.)

Relying on the above authorities, Webb submits the denial of his request at booking for a chemical test was a violation of "his statutory right to secure a chemical specimen . . . ." The contention is a red herring. The issue here is not whether Webb was driving while under the influence of alcohol, but rather, his refusal to submit to chemical testing. Consequently, even a test result favorable to Webb would have no bearing on whether he violated section 13353.

### Disposition

The judgment is reversed. The cause is remanded to the superior court with directions to enter a new and different judgment and to deny the petition for a writ of mandate. Each party to bear respective costs on appeal.

Lui, J., and Danielson, J., concurred.

A petition for a rehearing was denied December 30, 1986.