OFFICE OF THE ATTORNEY GENERAL
State of California

ROB BONTA
Attorney General

_____

|  |  |  |
|---|---|---|
| OPINION | : | No. 20-102 |
| of | : | November 2, 2021 |
| ROB BONTA<br>Attorney General | : | |
| ANYA M. BINSACCA<br>Deputy Attorney General | : | |

THE HONORABLE JOSE MEDINA, MEMBER OF THE STATE ASSEMBLY, has requested an opinion on a question relating to charter school employees serving on county boards of education.

## QUESTION PRESENTED AND CONCLUSION

May an executive director or other employee of a charter school serve as a member of the county board of education in the county where their employing school is located?

No. An executive director or other charter school employee—like employees of a traditional public school—may not serve as a member of the county board of education in the county where their employing school is located.

## BACKGROUND

The Constitution requires the Legislature to provide for county boards of education.[1] The Legislature accomplished this in Education Code section 1000, which creates county boards of education consisting of five or seven members, with each member elected by the

_____

[1] Cal. Const., art. IX, § 7.

1

voters of a trustee area.[2]  A county board of education generally oversees the schools in the county and approves the budget put forth by the county superintendent.[3]

Charter schools are a class of public schools usually initiated by some combination of teachers, parents, community leaders, and community-based organizations.[4]  Charter schools operate differently from traditional public schools:  they are governed by California's Charter Schools Act,[5] which exempts them from many laws governing traditional school districts.[6]  Our Supreme Court has explained that the Charter Schools Act "is intended to allow 'teachers, parents, pupils, and community members to establish . . . schools that operate independently from the existing school district structure.'"[7]  The Act "seeks to expand learning opportunities, encourage innovative teaching methods, provide expanded public educational choice, and promote educational competition and accountability within the public school system."[8]

Charter schools require a charter from the public school system to operate.  The charter approval process typically begins at the school district level, although in certain circumstances it begins with the county board of education.[9]  A party wishing to operate a charter school presents a petition to the governing board of the school district in which the

---

[2] A recent amendment to Education Code section 1000 allows high school students within a county to petition their county board of education to include one or two pupil members on the board, which are in addition to the number of board members prescribed. Any pupil members have "preferential voting rights," which allow expression of opinion but are not counted in determining the outcome of a vote.  (Stats. 2021, ch. 669, § 1.)

[3] Ed. Code, §§ 1040, 1042, 1043, 1080; 85 Ops.Cal.Atty.Gen. 77, 77 (2002).

[4] See Cal. Dept. of Education, Private Schools Frequently Asked Questions, What Is a Charter School?, <https://www.cde.ca.gov/sp/ps/psfaq.asp#a9> (as of Nov. 2, 2021).

[5] Ed. Code, § 47600 et seq.

[6] Ed. Code, § 47610.

[7] *Wells v. One2One Learning Foundation* (2006) 39 Cal.4th 1164, 1186, quoting Ed. Code, § 47601.

[8] *Ibid.*, citing Ed. Code, § 47601, subds. (a)-(g).

[9] Ed. Code, §§ 47605, subd. (a) (petition submitted to governing board of school district), 47605.5 (petition submitted to county board where school would serve students for whom county office is responsible for direct education), 47605.6 (petition submitted to county board where school would provide services for pupils across districts within county).

charter school would be located.[10]  If the district board denies the petition, the petitioner may present it to the relevant county board of education.[11]  If the county board of education also denies the petition, the petitioner may appeal that denial to the State Board of Education.[12]  If the district or county board grants a charter petition, the granting board is designated as the chartering authority.[13]  If the State Board of Education grants a charter petition, it designates either the district or county board as the chartering authority.[14]

Although charter schools generally operate independently from the traditional public school system, they are nonetheless subject to public oversight and regulation.[15]  It is this public oversight that prompts the question before us:  may a charter school employee sit on a county board of education that has jurisdiction over their employing charter school?

## ANALYSIS

We first consider whether the incompatible offices doctrine, codified by Government Code section 1099, prohibits charter school employees from serving as a member of the county board of education in the county where their employing school is located.  That inquiry turns in part on whether the employee occupies a "public office" subject to section 1099.  As explained below, we conclude that some—but not all—charter school employees are "public officers" under section 1099, and would be prohibited from serving as a member of the board of education due to the potential for conflict between their two positions.  We then consider Education Code section 1006, which extends the rule against holding incompatible offices to prohibit any employee of a "school district" from serving on the county board of education with jurisdiction over that school district.  We conclude that the Legislature intended this prohibition to apply to charter school employees as well as traditional public school employees, making it impermissible for any

---

[10] Ed. Code, § 47605, subd. (a)(1).

[11] Ed. Code, § 47605, subds. (k)(1)(A)(i), (k)(1)(A)(ii).

[12] Ed. Code, §§ 47605, subds. (k)(2), (k)(2)(E).  There is an exception for counties in which the county board of education has jurisdiction over a single school district.  In those cases, the petitioner may elect to submit a petition denied by the district board directly to the state board.  (Ed. Code, § 47605, subd. (k)(1)(B).)

[13] *California School Bds. Assn. v. State Bd. of Ed.* (2010) 186 Cal.App.4th 1298, 1307.

[14] Ed. Code, § 47605, subd. (k)(2)(E).

[15] *Today's Fresh Start, Inc. v. Los Angeles County Office of Ed.* (2013) 57 Cal.4th 197, 206.

3

employee of a charter school to serve as a member of the county board of education in the county where their employing school is located.

## Government Code Section 1099—The Incompatible Offices Doctrine

We begin by analyzing whether the incompatible offices doctrine bars the executive director or other employees of a charter school from serving on the county board of education in the county where their employing school is located.  The incompatible offices doctrine—originally developed as common law and later codified as Government Code section 1099—prohibits a person from holding two incompatible public offices.[16]  Offices are incompatible if, "[b]ased on the powers and jurisdiction of the offices, there is a possibility of a significant clash of duties or loyalties between the offices."[17]  If two offices are incompatible, the officer is "deemed to have forfeited the first office upon acceding to the second."[18]

The threshold inquiry in any incompatible offices analysis is whether each position at issue constitutes a public office or instead is merely one of public employment.[19]  For purposes of the incompatible offices doctrine generally, a public office is "'a position in government (1) which is created or authorized by the Constitution or some law; (2) the tenure of which is continuing and permanent, not occasional or temporary; (3) in which the incumbent performs a public function for the public benefit and exercises some of the sovereign powers of the state.'"[20]  "Sovereign powers of the state" include statutorily imposed duties related to the exercise of state police powers; power to dispose of public property; power to incur financial obligations on the part of the government; and the power to act in business or political dealings between individuals and the public, where the public must act through official agencies.[21]

---

[16] Gov. Code, § 1099 & *id*., subd. (f) ("This section codifies the common law rule prohibiting an individual from holding incompatible offices").

[17] Gov. Code, § 1099, subd. (a)(2).

[18] Gov. Code, § 1099, subd. (b).

[19] Gov. Code, § 1099, subds. (a) (public officer shall not hold two offices that are incompatible), (c) (section does not apply to positions of employment, including civil service positions).

[20] 101 Ops.Cal.Atty.Gen. 81, 83 (2018), quoting 68 Ops.Cal.Atty.Gen. 337, 342 (1985).

[21] 73 Ops.Cal.Atty.Gen. 183, 184-185 (1990), quoting *Schaefer v. Superior Court* (1952) 113 Cal.App.2d 428, 432-433.

If both positions are "public offices," the next inquiry is whether they are incompatible. The test for determining whether offices are incompatible is whether "one of the offices has supervisory, auditory or removal power over the other or if there would be any significant clash of duties or loyalties in the exercise of official duties," or if public policy considerations otherwise make it improper for one person to hold both offices.[22] "Only one potential significant clash of duties or loyalties is necessary to make offices incompatible."[23] An actual conflict is not required. Rather, "the mere possibility of a conflict is sufficient to make two offices incompatible."[24]

The question here asks whether the position of member of a county board of education is incompatible with the position of charter school employee. As to the threshold inquiry, we have already concluded that a county board of education member holds a "public office."[25] But many charter school employees merely hold a "position of employment" that is not subject to the prohibition of section 1099.[26] The incompatible offices doctrine only applies to charter school employees where they hold a position that qualifies as "a public office." We have identified at least two situations in which a charter school employee may also be a charter school official. We analyze each situation below.

### *Charter School Board Members*

The Education Code expressly allows charter school employees to serve on the board governing their charter school.[27] The Court of Appeal has recognized that charter school board members "stand on the same constitutional footing as noncharter school board members," and "are officers of public schools to the same extent as members of other boards of education of public school districts."[28] We have already concluded that members

---

[22] 85 Ops.Cal.Atty.Gen. 60, 61 (2002); Gov. Code, § 1099, subd. (a); *People ex rel. Lacey v. Robles* (2020) 44 Cal.App.5th 804, 819.

[23] 85 Ops.Cal.Atty.Gen., *supra*, at p. 61.

[24] 93 Ops.Cal.Atty.Gen. 110, 111 (2010).

[25] 79 Ops.Cal.Atty.Gen. 155, 157 (1996).

[26] See Gov. Code, § 1099, subd. (c).

[27] Ed. Code, § 47604.1, subd. (d) (notwithstanding Article 4 of the Government Code, which contains sections 1090 and 1099, a charter school employee is not disqualified from serving on the governing body of the charter school because of their employment status).

[28] *Wilson v. State Bd. of Educ.* (1999) 75 Cal.App.4th 1125, 1141.

of public school district boards are public officers for incompatible offices purposes.[29] And the Legislature has directed that the article of the Government Code containing section 1099 applies to charter schools and any "entity managing a charter school."[30] We thus conclude that charter school governing board members, like the members of public school district boards, are public officers for purposes of section 1099.

Turning to the incompatibility analysis, we note that we have previously found that positions on various boards of education with overlapping jurisdiction are incompatible offices.[31] Here, we similarly conclude that acting as a member of a charter school governing board is incompatible with acting as a member of the county board of education for the county in which the charter school is located. County boards of education interact with charter schools in three main ways: as chartering authorities, in exercising general oversight of the schools under their jurisdiction, and as an appellate body within the chartering process. Based on these interactions, if an individual is both a member of the governing board of a charter school and the county board of education with jurisdiction over that charter school, there is a serious possibility that the individual will have conflicting duties or loyalties.

First, the county board of education may be called on to evaluate a proposed charter; and, if the county board becomes the chartering authority, it will have the power to revoke or renew the school's charter.[32] The county board's role in determining the charter school's initial and continued existence would surely create a significant clash of loyalties for an individual serving on both the board of the charter school and the county board of education. Additionally, the county board's authority to make these existential decisions regarding a charter school can result in litigation, and we have previously identified the potential for two entities to sue each other as supporting a determination of incompatible

---

[29] 56 Ops.Cal.Atty.Gen. 556, 557 (1973) ("local school district board is unquestionably a public office").

[30] Ed. Code, § 47604.1, subd. (b)(3).

[31] See 68 Ops.Cal.Atty.Gen. 171 (1985) (member of high school district board and member of elementary school district board within that high school district are incompatible offices); 31 Ops.Cal.Atty.Gen. 170 (1958) (member of a county board of education and member of State Board of Education are incompatible offices); Cal.Atty.Gen., Indexed Letter, No. I.L. 75-22 (Feb. 18, 1975) (member of elementary school district board is incompatible office with respect to member of community college district board or member of high school district board).

[32] Ed. Code, §§ 47605, subd. (k)(1)(A)(i) (charter petition denied by district may be presented to county), 47607, subds. (a)(2) (chartering authority may grant renewals), (f) (chartering authority may revoke charter).

6

offices.[33]  As the chartering authority, the county board would also have significant and ongoing oversight functions, including ensuring compliance with all reporting requirements, monitoring the fiscal condition of the school, and receiving complaints.[34]  As noted above, where one office has supervisory authority over another, the offices are incompatible.[35]

Second, outside of its role as a chartering authority, a county board of education interacts with all charter schools under its jurisdiction through a general public oversight role.[36]  Responsibility for charter school oversight within a county is shared among the county board of education, the county office of education, and the county superintendent.[37]  The county board is the governing board of the county office of education, and the county superintendent is the head of the county office of education.[38]  Charter schools must respond to all reasonable inquiries from the county office of education, including inquiries regarding their financial records.[39]

The county superintendent is charged with monitoring and investigating charter schools within the county.[40]  County superintendents are either appointed by the county board of education or elected; in either case, the board sets the superintendent's salary and approves the superintendent's budget.[41]  Charter schools must annually provide the county

---

[33] See, e.g., *Am. Indian Model Sch. v. Oakland Unified Sch. Dist.* (2014) 227 Cal. App. 4th 258 (charter operator petitioned for writ of mandate challenging district's revocation of its charter, affirming partial grant of mandate); 68 Ops.Cal.Atty.Gen., *supra*, at p. 173, citing No. I.L. 75-22, *supra*, at pp. 4-5 (person holding office on two boards may have to decide whether one board should sue the other, and would face additional conflicts during ensuing litigation).

[34] Ed. Code, §§ 47604.32 & *id*., subds. (a)(3), (a)(4), 47605, subd. (e)(4)(E)(i).

[35] 85 Ops.Cal.Atty.Gen., *supra*, at p. 61.

[36] *Today's Fresh Start*, *supra*, 57 Cal.4th at p. 206 (although approved charter schools operate independently of the traditional public school administrative structure, they are nevertheless subject to public oversight).

[37] *Id*. at p. 207, fn. 4.

[38] *San Jose Unified School Dist. v. Santa Clara County Office of Education* (2017) 7 Cal.App.5th 967, 971.

[39] Ed. Code, § 47604.3.

[40] Ed. Code, §§ 1241.5, subd. (c), 47604.4, subd. (a).

[41] Cal. Const., art. IX, §§ 3 (county superintendent may be elected or appointed by county board of education, with the manner determined by the county electorate), 3.1, subd.

superintendent with a preliminary budget, a local control and accountability plan, two interim financial reports, and a final report for the year.[42]  The county superintendent may investigate and monitor the operations of charter schools within the county based on complaints by parents or other information justifying an investigation.[43]  And the county superintendent may review or audit the expenditures and internal controls of any charter school in the county if there is "reason to believe that fraud, misappropriation of funds, or other illegal fiscal practices have occurred."[44]  Thus, both through its own powers and because it controls the budget (and in some cases the appointment) of the county superintendent, a county board of education is significantly involved in the public oversight of charter schools within its jurisdiction.  These oversight responsibilities present the possibility of "clashing duties or loyalties" should one individual serve on the boards of both entities.[45]

Third and finally, county boards of education sometimes act as appellate bodies with respect to the charter approval and continuation process.  If a district revokes a charter, the school may appeal that revocation to the county board of education.[46]  Similarly, if a school district does not renew a charter, the charter school may appeal that decision to the county board of education.[47]  A significant clash of duties would occur if a district revoked or declined to renew a charter and the school appealed that revocation to the county board of education.

For all of these reasons, a county board of education member who is also a member of the board governing a charter school in that county would face the "possibility of a significant clash of duties or loyalties between the offices."[48]  Accordingly, if a charter

---

(b) (county board of education sets county superintendent's salary); Ed. Code, §§ 1040, subd. (c) (county board of education approves county superintendent's budget before submission to county board of supervisors), 1042, subd. (e) (where county superintendent is elected and a vacancy occurs mid-term, county board may appoint interim superintendent upon adoption of such authority at public meeting).

[42] Ed. Code, § 47604.33, subd. (a).

[43] Ed. Code, § 47604.4, subd. (a).

[44] Ed. Code, § 1241.5, subd. (c).

[45] Gov. Code, § 1099, subd. (a)(2).

[46] Ed. Code, § 47607, subd. (i).

[47] Ed. Code, § 47607.5, subd. (a).

[48] Gov. Code, § 1099, subd. (a)(2).

school employee serves on the governing board of the school, that employee may not also serve as a member of the county board of education.

### *Charter School Executive Director*

The second situation in which a charter school employee might be a public officer for purposes of the incompatible offices doctrine involves a charter school executive director. We have not previously examined whether a charter school director is a public officer and have not found any judicial authority on point. To resolve the question in any particular case, we would need to know more about the specific executive director position. As explained below, however, we expect that in many cases the position of charter school executive director will not be a public office.

We received conflicting comments regarding whether a charter school executive director is a public office. One commenter argued in the affirmative, noting that we have previously found a county superintendent of schools to be a public officer for incompatible offices purposes, and that a court has determined that a charter school superintendent is a public official in the context of the standard of proof for a libel claim.[49] But county and charter school superintendents are significantly different from directors of individual charter schools, which are likely more akin to traditional public school principals. And although we have not directly answered the question whether school principals are employees or public officers for purposes of section 1099, the available authority and evidence of legislative intent suggests that they are employees.[50] This commenter also urged that charter school executive directors exercise sovereign state powers in the sense that the Legislature has delegated the function of public education to them in the Charter Schools Act. But the role of charter school director appears to be executing decisions made by the charter school board, to whom the state power of public education has been

---

[49] 101 Ops.Cal.Atty.Gen. 56, 60-61 (2018) (Contra Costa County Superintendent of Schools is a public officer because duties are statutorily prescribed, "performs important governmental functions requiring the exercise of independent judgment and discretion," and may expend government funds); *Ghafur v. Bernstein* (2005) 131 Cal.App.4th 1230, 1237-1239 (charter school superintendent was public official for libel purposes because, like traditional public school superintendent, she had substantial control over governmental affairs and position was of such community importance to invite discussion and scrutiny).

[50] See, e.g., Ed. Code, § 44670 (providing for evaluation of principals, and appearing in Part and Chapter addressing employees); see also *Grant v. Adams* (1977) 69 Cal.App.3d 127, 132 (principals serve at pleasure of governing board, treating principal's claim regarding demotion as a question of public employment).

9

delegated. We have found no authority indicating that charter school directors exercise independent judgment and discretion with respect to delegated state powers.[51]

Another commenter argued that an executive director of a charter school is a position of employment rather than a public office. That commenter analogized to the position of executive director of a housing authority, which we have found to be a position of employment.[52] The commenter posited that executive director of a charter school is similar to executive director of a housing authority because both exist as a function of contract, in contrast to positions created and defined by law. Statutorily defined duties are evidence that an officer is exercising delegated sovereign state power.[53] This point is persuasive.

We do not doubt that there may be some circumstances in which a charter school's executive director will qualify as a public officer. Some executive directors may sit on the school's governing board and be a public officer of the school for that reason.[54] In other cases, executive directors may qualify as public officers because of the specific state powers they exercise.[55] In general, though, we would expect that charter school directors—like school principals—would be deemed employees rather than public officers. Neither traditional school principals nor charter school executive directors have duties defined by law, and thus they typically carry out the directives of their employer rather than exercising sovereign state authority. This stands in contrast to, for instance, the position of county superintendents, whom the Education Code requires to generally oversee schools in the county, oversee the finances of school districts, and enforce the course of study, among

---

[51] See 101 Ops.Cal.Atty.Gen., *supra*, at p. 61 (finding a particular superintendent to be a public officer because, among other reasons, they perform "important governmental functions requiring the exercise of independent judgment and discretion").

[52] 81 Ops.Cal.Atty.Gen. 274, 275-276 (1998).

[53] See *id*. at p. 276, quoting Cal.Atty.Gen., Indexed Letter, No. I.L. 78-102 (July 18, 1978) (concluding that although the position of secretary and executive director of a housing authority is authorized by statute, "the position, if created at all, is a creature of a contract entered into by the authority, which sets the terms of employment," and distinguishing the position from one where duties are statutorily defined).

[54] See *ante*, pp. 5-6 and fn. 27.

[55] Cf. *Ghafur v. Bernstein*, *supra*, 131 Cal.App.4th at pp. 1237-1239 (charter school superintendent had substantial control over governmental affairs and position was of such community importance to invite discussion and scrutiny, making superintendent a public official for purposes of libel laws).

10

other things.[56] Because the position of charter school director is not created by law and does not necessarily exercise sovereign state power, the position is not categorically a public office for purposes of the incompatible offices doctrine.[57]

To summarize, our analysis of the incompatible offices doctrine leads us to conclude that some—but not all—charter school employees will be prohibited from serving on their county board of education by Government Code section 1099. Because that analysis does not fully answer the question presented, we next examine whether Education Code section 1006 would prohibit charter school employees from serving on their county board of education.

**Education Code Section 1006—Eligibility for County Boards of Education**

Education Code section 1006 directs that "[a]ny registered voter is eligible to be a member of the county board of education except the county superintendent of schools or any member of his or her staff, or any employee of a school district that is within the jurisdiction of the county board of education."[58] Our analysis here considers whether charter school employees are included in the prohibition against school district employees serving on county boards of education.[59]

---

[56] 101 Ops.Cal.Atty.Gen., *supra*, at pp. 60-61.

[57] See 101 Ops.Cal.Atty.Gen., *supra*, at p. 83 (public office is created or authorized by law and exercises some of the sovereign powers of the state).

[58] Ed. Code, § 1006, subd. (a).

[59] Some school districts themselves operate charter schools, referred to as "affiliated" or "dependent" charter schools. (See Mikhail Zinshteyn, Quick Guide: Understanding Charter Schools, July 20, 2017, <https://edsource.org/2017/10-things-to-know-about-charter-schools/583984>.) Employees of such charter schools would appear to be employees of the district to the same extent as people working at a traditional public school. (See generally Ed. Code, tit. 2 [Elementary & Secondary Education], div. 3 [Local Administration], pt. 25 [Employees], art. 2 [Employment] [treating school district as employer in various contexts]; *Vasquez v. Happy Valley Union School Dist.* (2008) 159 Cal.App.4th 969, 974 [treating school district as employer, e.g., "Permanent teachers are those who a school district has employed for two complete consecutive school years," and "A school district may terminate a permanent teacher only for misconduct or due to a reduction in the overall number of teachers"].) Thus, these charter school employees are clearly covered by the prohibition against district employees serving on the county school board.

11

We begin with the statutory text. "School district" as used in section 1006 is ambiguous as to whether charter schools are included in its meaning.[60] The language of section 1006 itself does not provide any clarification as to whether a charter school constitutes a "school district" within the meaning of that provision, so we look to the surrounding statutory framework. There we find that the Legislature sometimes considers charter schools to be school districts, and sometimes distinguishes them. For example, charter schools are considered school districts for certain public finance statutes. Most notably, charter schools are "deemed" to be school districts for purposes of public school funding.[61] And they are subject to fiscal oversight in the same manner as traditional public school districts.[62] Charter schools also fall into the same category as school districts for most open meeting and conflict-of-interest laws: In 2019, the Legislature added a provision to the Charter Schools Act directing that charter schools (and entities managing charter schools) are subject to the Ralph M. Brown Act, the Bagley-Keene Open Meeting Act, the California Public Records Act, the Political Reform Act, and the article of the Government Code containing section 1099 and section 1090 (which prohibits conflicts of interest in government contracts).[63]

Of course, one of the defining characteristics of charter schools is that in many other contexts the Legislature treats them differently from traditional public school districts. Most notably, the "mega-waiver" in the Charter Schools Act exempts charter schools from most laws pertaining to school districts.[64] This waiver provides operational independence

---

[60] *Gateway Community Charters v. Spiess* (2017) 9 Cal.App.5th 499, 507 ("though charter schools in some ways and for some purposes are treated as public school districts, for other purposes they are not"); *Wells v. One2One Learning Foundation* (2006) 39 Cal.4th 1164, 1186 (for certain purposes, charter schools are "deemed" to be school districts).

[61] Ed. Code, § 47612, subd. (c) (charter school deemed school district for purposes of "Article 1 (commencing with Section 14000) of Chapter 1 of Part 9 of Division 1 of Title 1, Section 41301, Section 41302.5, Article 10 (commencing with Section 41850) of Chapter 5 of Part 24 of Division 3, Section 47638, and Sections 8 and 8.5 of Article XVI of the California Constitution").

[62] Ed. Code, § 47612, subd. (a) ("A charter school shall be deemed to be under the exclusive control of the officers of the public schools for purposes of Section 8 of Article IX of the California Constitution, with regard to the appropriation of public moneys to be apportioned to any charter school, including, but not necessarily limited to, appropriations made for purposes of this chapter").

[63] Ed. Code, § 47604.1, Stats. 2019, ch. 3 (S.B. 126), § 1.

[64] Ed. Code, § 47610 ("A charter school shall comply with [title 2, division 4, part 26.8 of the Education Code] and all of the provisions set forth in its charter, but is otherwise

12

and frees charter schools to innovate, giving them control over their curricula and exempting them from requirements like adopting specific textbooks.[65] Thus, the surrounding statutory framework does not provide a clear answer.

Standard canons of statutory interpretation also point in different directions. Given that the Legislature sometimes specifically identifies when charter schools should be treated as school districts, its failure to do so in section 1006 could indicate that the Legislature did not intend charter schools to be covered.[66] Moreover, as a general matter, statutory "[a]mbiguities are to be resolved in favor of eligibility to office."[67] On the other hand, as discussed above, when the Legislature has specifically confronted the question of whether to treat charter schools as school districts for the purpose of other public integrity statutes, it has chosen to do so. And principles of statutory construction generally counsel in favor of strictly enforcing conflict-of-interest statutes to achieve public policy goals.[68]

Because none of these sources provides a clear answer, we look to the legislative history and evidence of the legislative purpose of section 1006. We have previously opined that the purpose of section 1006 is to extend the common law rule against holding incompatible offices beyond its application to two public offices to a situation where one position is a public office and the other is a position of public employment.[69] As originally enacted, section 1006 did not have the explicit jurisdictional limit that is in the current text, and the original text could have been read to exclude any school district employee from

---

exempt from the laws governing school districts," and providing exceptions); *Anderson Union High School Dist. v. Shasta Secondary Home School* (2016) 4 Cal.App.5th 262, 278 (Education Code section 47610, "known as the mega-waiver statute, exempts charter schools from most of the laws that govern school districts").

[65] See *Wilson v. State Bd. of Educ.*, *supra*, 75 Cal.App.4th at pp. 1140-1142 (through the Charter Schools Act, "the Legislature has exercised its discretion to sanction a certain degree of flexibility and operational independence," giving charter schools control over curriculum); *id.* at pp. 1145–1146 (charter schools exempt from requirement to adopt textbooks).

[66] See, e.g., *Briggs v. Eden Council for Hope & Opportunity* (1999) 19 Cal.4th 1106, 1117 ("Where different words or phrases are used in the same connection in different parts of a statute, it is presumed the Legislature intended a different meaning").

[67] *Carter v. Commission on Qualifications of Judicial Appointments* (1939) 14 Cal.2d 179, 182.

[68] *Thomson v. Call* (1985) 38 Cal.3d 633, 650.

[69] 69 Ops.Cal.Atty.Gen. 290, 291-292 (1986), citing and quoting 68 Ops.Cal.Atty.Gen. 240, 244 (1985).

13

serving on *any* county board of education.[70] In construing the original text, however, we opined that the Legislature intended to prohibit membership only with respect to the county board of education having jurisdiction over an individual's employing school district.[71]

In reaching that conclusion, we observed that section 1006 effectively extended the common-law doctrine of incompatible offices.[72] We explained that Section 1006 applied the incompatible offices doctrine to a scenario where one position is a public office (in that case, member of the county board of education) and the other is public employment (in that case, substitute teacher).[73] We reasoned that the evolution of county boards of education from appointed bodies that were legally mandated to include both credentialed teachers and the county superintendent, to elected bodies from which school district employees were excluded, demonstrated that the Legislature intended the exclusion of teachers only from county boards of education that had jurisdiction over their employing district.[74] As we acknowledged, it was unclear what policy considerations motivated this shift, but "whatever the reason, incompatibility was set."[75]

In 2012, the Legislature amended section 1006 to its current form, and the history of that amendment shows that the Legislature sought to balance an individual's right to serve on a board of education against the potential for a conflict of interest if that individual were to serve on a board that had jurisdiction over their employing district.[76] As originally introduced, the amendment would have eliminated the ban on school district employees serving on county boards, meaning that a school district employee could serve as a member of *any* county board of education, including the one having jurisdiction over their

---

[70] Former Ed. Code, § 1006, subd. (a), Stats. 1976, ch. 1010, § 2 ("Any registered voter is eligible to be a member of the county board of education except the county superintendent of schools, any member of his staff, or any employee of a school district").

[71] 69 Ops.Cal.Atty.Gen., *supra*, at p. 295.

[72] *Id*. at p. 291 (1986) (considering whether a substitute teacher may serve on a county board of education).

[73] *Ibid*., citing and quoting 68 Ops.Cal.Atty.Gen. 240, 244 (1985).

[74] 69 Ops.Cal.Atty.Gen., *supra*, at pp. 293-295.

[75] *Id*. at pp. 294-295.

[76] Stats. 2012, ch. 499, § 1; see *Coalition of Concerned Communities, Inc. v. City of Los Angeles* (2004) 34 Cal.4th 733, 737 (legislative history is an appropriate aid in determining legislative intent).

14

employing district.[77] But then legislators recognized the potential for conflicts of interest if district employees were allowed to serve on the county board of education with jurisdiction over their employing district. A bill analysis identified the aims of the amendment as "eliminating the unnecessary prohibition against school employees serving on county boards of education in counties *other than* the ones in which they are employed," protecting "the constitutional rights of school employees," and "allowing county boards of education to benefit from the unique insight that these employees can offer."[78] The analysis also noted that the bill would align section 1006 with the reasoning of our prior Attorney General Opinion.[79]

The Legislature thus amended section 1006 "to allow only employees of school districts that are not within the jurisdiction of the county office of education to serve on that county's board of education."[80] This alleviated concerns over the conflicts of interest that could arise when county boards of education reviewed and certified a district's budget, acted as the appellate body with respect to disciplinary decisions and charter school proposals, or monitored compliance with legal settlements.[81] Legislators indicated that this approach balanced the general right of district employees to serve on county boards of education against the need to avoid conflicts of interest.[82]

With that legislative purpose in mind, we conclude that the Legislature intended the phrase "any employee of a school district" in section 1006 to include charter school employees. The practical consequences that flow from that interpretation support this conclusion.[83] A charter school employee who served as a member of the county board of education in the same county as their school would face a potential clash of duties or

[77] Assem. Com on Ed., Analysis of Assem. Bill No. 1662 (2011-2012 Reg. Sess.) as introduced Feb. 14, 2012, Apr. 16, 2012, p. 1.

[78] Sen. Com. on Ed., Analysis of Assem. Bill No. 1662 (2011-2012 Reg. Sess.) as amended Apr. 26, 2012, pp. 1-2, italics added.

[79] *Id*. at p. 2, referencing 69 Ops.Cal.Atty.Gen. 290 (1986).

[80] Assem. Com. on Ed., analysis of Assem. Bill No. 1662 (2011-2012 Reg. Sess.) as introduced Feb. 14, 2012, Apr. 16, 2012, p. 2 (recommending this amendment).

[81] *Id*. at p. 1.

[82] Sen. Com on Ed., Analysis of Assem. Bill 1662 (2011-2012 Reg. Sess.) as amended Apr. 26, 2012, for hearing Jun. 13, 2012, pp. 2-3.

[83] *Dyna-Med, Inc. v. Fair Employment & Housing Com*. (1987) 43 Cal.3d 1379, 1386 ("first task in construing a statute is to ascertain the intent of the Legislature so as to effectuate the purpose of the law"); *id*. at p. 1387 (where ambiguity exists, "consideration should be given to the consequences that will flow from a particular interpretation").

loyalties in several ways.  As discussed above, as a county board of education member, they might be called on to revoke or renew their school's charter; to make litigation decisions regarding the school's charter; to oversee the school and ensure its compliance with reporting requirements; to investigate the school; or to act as a member of an appellate body with respect to the charter approval and continuation process.[84]  The potential for conflict is manifest.

Finally, treating charter schools as school districts for purposes of section 1006 is also consistent with our previous opinion on charter school employees and conflict-of-interest laws.[85]  Before the Legislature amended the Charter Schools Act to clarify that California's primary government ethics laws applied to charter schools, we concluded that a charter school was a "school district . . . or other local public agency" for the purposes of the Brown Act and the Public Records Act.  After noting that charter schools were deemed school districts subject to the control of the public school system with regard to public funding, and that school districts were expressly covered by the Brown Act's open-meeting rules and the Public Records Act's public-access rules, we reasoned:  "'school districts' are subject to sunshine laws, and charter schools are 'school districts' for purposes of receiving state funding.  What charter schools do with the public money that they receive is a matter of legitimate concern to the taxpaying public."[86]  We also concluded that charter schools were subject to Government Code section 1090's prohibition on financial interests in government contracts and the Political Reform Act:  "Seeing that corporate charter schools are licensed and paid to participate in the essential public function of providing a mandatory free education to California's children, we conclude that they are bound by all of the public-integrity laws that we examine here."[87]

Similar reasoning supports our conclusion here that charter schools are school districts for the purpose of Education Code section 1006, which is a conflict-of-interest law in relevant part.  Charter schools are part of our state governance structure; they receive state funding and participate in the essential public function of providing mandatory free education.[88]  Thus, with respect to service on government boards with jurisdiction over their employing schools, charter school employees are analogous to traditional public school district employees.

---

[84] See discussion *ante*, at pp. 6-8.

[85] 101 Ops.Cal.Atty.Gen. 92, 98 (2018).

[86] *Ibid*., citations omitted.

[87] *Id*. at p. 96.

[88] *Ibid*.

Recent legislation reinforces this conclusion. As noted, in 2019 the Legislature added a provision to the Charter Schools Act confirming our decision that California's sunshine and conflict-of-interest laws applied to charter schools.[89] And in 2020, the Legislature precluded the State Board of Education from waiving the application of the statute applying the public integrity laws to charter schools.[90] This clarification refers to a provision allowing the state board to waive certain requirements upon request from a school district or county board of education.[91] By making government ethics laws applicable to charter schools, and by applying to charter schools an exemption process that by its language only applies to school districts and county boards of education, the Legislature has treated charter schools as school districts with respect to other government ethics laws. We conclude that the Legislature had a similar intent in enacting Education Code section 1006, and intended for this provision to cover employees of charter schools as well as employees of traditional public school districts.

*****

---

[89] Ed. Code, § 47604.1, Stats. 2019, ch. 3 (S.B. 126), § 1.

[90] Ed. Code, § 47604.1, subd. (g), Stats. 2020, ch. 24 (S.B. 98), § 42.

[91] Ed. Code, § 33050.